W. Edward THOMPSON, Appellant,

v.

SUN OIL COMPANY, a Pennsylvania Corporation, doing business in the State of Nebraska, Appellee.

No. 74–1953.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1975.

Decided Oct. 3, 1975.

W. Edward Thompson, Washington, D. C., for appellant.

Robert L. Berry, Omaha, Neb., for appellee.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

PER CURIAM.

W. Edward Thompson, a black, brought this employment discrimination action against Sun Oil Company [hereinafter referred to as the Company] seeking damages, and declaratory and injunctive relief. Plaintiff claims that the Company violated the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by requiring him to take an employment test for the position of Motor Products Salesman trainee. The suit was filed as a class action.

After discovery was closed the Company moved for summary judgment offering three affidavits in support of its motion. The uncontroverted substance of the affidavits was that the test was not used to evaluate the future job performance of Thompson or any other job applicant, and that the information gathered was used merely to validate the test. The district court denied certification of the suit as a class action and granted summary judgment in favor of the Company. We affirm.

After withdrawing from Wayne State Law School, Thompson came to Omaha, Nebraska in search of employment. He went to the Urban League where Mrs. Douglas, a job counselor, introduced him to Mr. Hall, a representative of Sun Oil Company, who was then seeking to hire a minority applicant as a full-time salesman trainee. An interview was arranged for November 17, 1971, at which time Thompson was required to take the employment test. Shortly thereafter, Thompson learned from Mrs. Douglas that Mr. Hall felt that he was overqualified for the job. Thompson assumed that his application had been denied and, on December 2, 1971, filed a discrimination charge with the Equal Employment Opportunity Commission. In fact, Thompson was never denied employment by the Company. The record is clear that he was twice offered the job after the discrimination charge was filed. He did not accept the job because he decided to return to law school in January, 1972.

Thompson was admitted to Creighton Law School, at least informally, sometime prior to November 10, 1971, for the purpose of transferring credits to Wayne State. On December 3, 1971, the Creighton faculty voted to admit plaintiff, without the payment of tuition, for the purpose of earning his degree at Creighton. Thompson did reenter law school shortly thereafter and was graduated from Creighton in January, 1972.

On this appeal we discern three major areas of dispute between the parties: (1) the district court's refusal to certify the suit as a class action; (2) the order granting summary judgment in favor of the Company; and (3) certain discovery matters.

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

■ The district court clearly did not abuse its discretion in refusing to certify Thompson's suit as a class action. On the record before us it is clear that Thompson could not show either the existence of any identifiable class or that he was an adequate representative of any supposed class. He admitted in his deposition that he could not identify any persons who had similarly applied for employment with the Company and had been rejected. The principal claim on behalf of the alleged class, that the use of the test was discriminatory, was clearly incorrect according to undisputed affidavits hereinafter described.

■ The order granting summary judgment was also proper. We note that under Fed.R.Civ.P. 56 summary judgment is proper only where the record discloses no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Ozark Milling Co. v. Allied Mills, Inc.*, 480 F.2d 1014 (8th Cir. 1973).

■ The validity of employment tests under the Civil Rights Act is governed by 42 U.S.C. § 2000e–2(h). That section does not prohibit their use. Title VII prohibits only tests which operate to disqualify a substantially higher percentage of blacks than whites and which are not job related. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). *Griggs* implicitly recognized that two prerequisites, disqualification from employment and discrimination, are essential to support a Title VII challenge of an employer's testing procedures. *Accord, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Both elements are missing here. Thompson was never disqualified by reason of the test; he was eventually offered the job of Motor Products Salesman trainee. Instead he chose to pursue his legal education, for which he began planning immediately upon his arrival in Omaha at least one week prior to his interview with the Company. The record clearly reflects that Thompson's predominant concern was to finance his legal education by means of a temporary job, not to pursue permanent employment with the Company.

But even assuming, *arguendo*, that Thompson was a sincere applicant, he failed to show any genuine factual issue with respect to discrimination. The uncontroverted affidavits [1] offered by the Company stated that the tests were never used to hire or reject any applicant, minority or otherwise. In fact, the plaintiff was deemed acceptable insofar as the test battery was concerned. The Company was merely in the process of validating the test when the plaintiff was interviewed.[2] Furthermore, the test was discontinued by Sun Oil early in 1972. Since Title VII prohibits only those employment tests which result in discrimination, *Hester v. Southern Railway Co.*, 497 F.2d 1374, 1381 (5th Cir. 1974), summary judgment was properly granted in this case.[3]

---

1. Plaintiff argues that we should ignore these affidavits because the Company refused to produce a copy of the tests which he and other job applicants were required to take. While we are inclined to agree that the Company's refusal to disclose the documents indicates bad faith, see note 4 *infra*, we do not believe this requires reversal. Thompson could have orally deposed the persons who offered the affidavits on behalf of the Company. The district judge did not hold, as Thompson argues, that he could not depose these persons. Judge Denney merely ordered that the Company representatives were not required to appear in Omaha for oral deposition.

2. It is relevant that 29 C.F.R. § 1607.4 (1974), *requires* that an employer have available for inspection evidence that any tests used for hiring are job related. To comply with this section, an employer should be given a reasonable opportunity to accumulate such information.

3. We note that plaintiff failed to appear at the July 17, 1974, hearing on the Company's motion for summary judgment although he was duly notified. In fact, the hearing was postponed from July 10, 1974, until July 17, 1974, at Thompson's request.

■■ Thompson's argument with respect to the discovery process is two-pronged. First he argues that the district court erred in quashing his notice to depose certain Company representatives in Omaha. Plaintiff's argument is not persuasive. The district court did not preclude Thompson from deposing any Company representative. The court merely ordered that the representatives could not be compelled to come to Omaha to be deposed. The Company would have incurred considerable expense in transporting the persons to Omaha who Thompson sought to depose. It is well settled that the district court has great discretion in designating the location of taking a deposition, *Terry v. Modern Woodmen of America*, 57 F.R.D. 141 (W.D.Mo.1972), and we refuse to disturb that discretion in this case.

■ Thompson also argues that the district court committed reversible error in refusing to require the Company to disclose certain documents in its exclusive possession. Specifically, Thompson requested production of copies of the tests he and other applicants were required to take, as well as a copy of the Company's affirmative action program. We do not believe the Company's refusal requires reversal, but we do believe its conduct was inexcusable.[4] For this reason all of the costs of this appeal are hereby assessed against the Company.

Affirmed.

---

4. The Company was evasive throughout the discovery process. For the sake of brevity, we outline only a few instances which, we believe, show the Company's lack of good faith. Thompson initially requested copies of the tests and affirmative action program on October 10, 1973. On November 14, 1973, the Company refused to disclose the documents. On December 17, 1973, plaintiff filed a motion to require, *inter alia*, the Company to disclose the documents. On January 24, 1974, the district court denied the majority of plaintiff's requests but specifically ordered the documents produced. On February 14, plaintiff renewed his request by filing a formal motion to produce. On March 26, 1974, and again on April 2, 1974, the Company refused to disclose the documents in defiance of the court's order. Although discovery was closed on April 30, 1974, Thompson again requested production of the documents on May 23, 1974. On June 4, 1974, the Company refused this request. The documents were never disclosed to the plaintiff and the defendant's motion for summary judgment was granted on October 11, 1974.