Howard HINES, Robert Monge, Emil R. Johnson, Wardell Hicks, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

Wendell ANDERSON, Individually and as Governor of the State of Minnesota, Kenneth Schoen, Individually and as Corrections Commissioner of the State of Minnesota, Bruce McManus, Individually and as Warden of the Minnesota State Prison, Dr. James Cicero, Individually and as Medical Director of the Minnesota State Prison, Dr. Warren Lawson, Individually and as Secretary and Executive Officer of the Minnesota State Board of Health, Defendants.

No. 4-73 Civ. 387.

United States District Court,
D. Minnesota,
Fourth Division.

May 27, 1977.

James P. Cullen, Minneapolis, Minn., for plaintiffs.

Greer E. Lockhart, Richards, Montgomery, Cobb & Bassford, Minneapolis, Minn., for Dr. Cicero.

Thomas H. Jensen, Sp. Asst. Atty. Gen., St. Paul, Minn., for Wendell Anderson, et al.

## ORDER AND CONSENT DECREE

LARSON, District Judge.

The Plaintiffs, having filed their complaint herein on August 7, 1973, and the Defendants having thereafter filed answers to such complaint denying the substantive allegations thereof, and the Plaintiffs and the Defendants, by and through their respective attorneys, having agreed to the making and entry of this order, without trial or adjudication of any issue of fact or law herein, and without admission by any party in respect to any issue, and both Plaintiffs and Defendants being desirous of the entry of this order and consent decree, and the Court being satisfied that the provisions of this order and consent decree are fairly supported by facts on file in this action:

IT IS HEREBY ORDERED AND DECREED AS FOLLOWS:

### I.

This Court has jurisdiction over the subject matter of this action and of the parties hereto. The complaint states claims upon which relief may be granted against the Defendants under 42 U.S.C. Section 1983 and the 8th and 14th Amendments to the Constitution of the United States.

### II.

As used in this decree:

a. Wherever an individual Defendant is personally identified, this order and decree shall apply to him or his agents, servants, employees, representatives or successors in interest.

b. "Medical care" shall mean and include examination, diagnosis and treatment.

c. "Prison hospital" means the physical facility located within the confines of the Minnesota State Prison, Stillwater, Minnesota, whether or not presently licensed or properly referred to as a "hospital."

d. "Prison health care facility" or "prison infirmary" means the physical facility located within the confines of the Minnesota State Prison at Stillwater, Minnesota, which was formerly licensed by the Minnesota State Board of Health as a hospital.

e. "Purely elective surgery" means, with respect to medical opinion and judgment, surgery which is not required to alleviate, correct or remedy a given problem or condition, the situation being such that an average patient might well tolerate it and forego surgery, e. g., resetting of an old fractured bone, which has long since healed and does not cause anything but minor discomfort.

f. "Purely cosmetic surgery" means that which is performed for the purpose of improving or beautifying the body or physical appearance or correcting a condition which presents no medical threat, e. g., removal of a birthmark or tattoo.

g. "24-hour lockup" means those situations in which an inmate is confined to a cell or cubicle for a substantial portion of the day and evening hours. "Substantial" means 18 hours or more in a 24-hour period.

h. The words "doctor" and "physician" are used interchangeably. They include individuals licensed to practice medicine in the State of Minnesota and do not include Ph.D.'s unless coupled with an M.D. They

do not include interns or residents unless specifically provided.

i. "Parties" means all of the Plaintiffs and all of the Defendants.

### III.

The Plaintiffs and Defendants have agreed to a stipulation settling this case and providing for the terms and provisions of this consent decree. On the basis of said stipulation and agreement, it is hereby ordered that the claims of the Plaintiffs herein for monetary damages, both individually and on behalf of a class of defined inmates, are hereby dismissed with prejudice. This dismissal of monetary claims shall not prejudice the right of any individual unnamed member of the class, defined in IV, *infra*, to assert, in another proceeding or action, any claim he may have for damages as a result of any alleged medical deprivation or malpractice, recognizable in law or equity, similar to those claims raised by the Plaintiffs herein. Defendants shall not have available to them, for a reasonable time hereafter, the defense of statute of limitations, in the event any member of said class shall assert such a claim, unless such defense were available to the Defendants as of August 7, 1973. Notwithstanding the foregoing, this consent decree, and the issues addressed and provided for herein, is binding on all members of the class of inmates defined in IV, *infra*, and the same may not be relitigated in conjunction with the assertion of any such monetary claim.

### IV.

This Court determines that the individual Plaintiffs have properly instituted this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and declares this to be a proper class action with respect to all issues of declaratory and injunctive relief and maintainable on behalf of all inmates of the Minnesota State Prison who are now or may in the future be in the need of medical care, including examination, diagnosis or treatment, while so confined.

### V.

Frank M. Wood, Warden, Minnesota State Prison, is hereby substituted for Bruce McManus, former Warden of the Minnesota State Prison, in his official capacity only. This substitution is made pursuant to stipulation of the parties and Rule 25(d) of the Federal Rules of Civil Procedure.

### VI.

That this Court makes no finding that said Defendants have, in fact, mistreated, deprived or neglected the individual Plaintiffs or members of the Plaintiff class. That, nonetheless, the terms and provisions of this order and decree shall be implemented by the Defendants, their successors, agents, employees and representatives, forthwith, as if the same had been involuntarily ordered:

### VI.A.

#### PROVISION OF MEDICAL CARE

■ 1. To the fullest extent possible in the prison environment, the provisions of Minn.Stat. § 144.651 (1974), commonly known as the "Patients' Bill of Rights," shall apply to inmates who receive medical care and treatment at the Minnesota State Prison. The provisions are as follows:

It is the intent of the legislature and the purpose of laws 1973, Chapter 688 to promote the interests and well being of the patients and residents of health care facilities. It is declared to be the public policy of this state that the interests of the patient be protected by a declaration of a patient's bill of rights which shall include but not be limited to the following:

(1) Every patient and resident shall have the right to considerate and respectful care;

(2) Every patient can reasonably expect to obtain from his physician or the resident physician of the facility complete and current information concerning his diagnosis, treatment and prognosis in terms and language the patient

can reasonably be expected to understand. In such cases that it is not medically advisable to give such information to the patient the information may be made available to the appropriate person in his behalf;

(3) Every patient and resident shall have the right to know by name and specialty, if any, the physician responsible for coordination of his care;

(4) Every patient and resident shall have the right to every consideration of his privacy and individuality as it relates to his social, religious, and psychological well being;

(5) Every patient and resident shall have the right to respectfulness and privacy as it relates to his medical care program. Case discussion, consultation, examination, and treatment are confidential and should be conducted discreetly;

(6) Every patient and resident shall have the right to expect the facility to make a reasonable response to the requests of the patient;

(7) Every patient and resident shall have the right to obtain information as to any relationship of the facility to other health care and related institutions insofar as his care is concerned, [and;]

(8) The patient and resident have the right to expect reasonable continuity of care which shall include but not be limited to what appointment times and physicians are available.

Provided, that nothing in this paragraph shall be interpreted as governing confidentiality of inmate medical records, which is treated fully by the parties in part VI.E, *infra*.

■ 2. No inmate shall be deprived of necessary and adequate medical care, including examination, diagnosis and treatment by reason of his status as an inmate, by reason of his indigency, or because he is close in time to release, discharge or parole. Such necessary and adequate care need not include purely elective surgery or treatments or surgery purely cosmetic in nature.

■ 3. No inmate shall be deprived of necessary or adequate medication by reason of his having been convicted of a drug-related offense, nor by reason of his drug dependency, unless a decision to so deprive him has been made by a physician employed at the Minnesota State Prison in the exercise of his best medical judgment with reference to the inmate's medical condition. No person other than a physician shall purport to prescribe prescription medications for an inmate; nor shall a prescription be interfered with, taken away or revoked by anyone other than a medical doctor, or by one acting pursuant to his order and direction. The nursing staff may dispense and order non-prescription medication. Nothing in this stipulation shall be construed so as to require administration of methadone in any drug maintenance program.

■ 4. All inmates entering the Minnesota State Prison shall receive a medical examination, both physical and psychological, and the results of such examinations shall be duly noted in the medical records of each respective inmate. These examinations shall follow current medical practice and consist of at least the following:

a. Physical Examinations

(1) A health history interview;

(2) A blood test, which shall normally consist of a blood count, V.D.R.L. and blood pressure test, but which shall be more comprehensive where medically indicated;

(3) Urine test;

(4) Chest X–Ray;

(5) Mantoux test;

(6) Eye examination;

(7) Tetanus Toxoid Injection;

(8) In addition, inmates over forty (40) years of age shall receive an EKG and a glaucoma test.

b. Psychological.

A psychological test and/or examination as determined by a certified psychologist shall be administered to each inmate who enters the Minnesota State Prison.

■ 5. Where medically indicated, an indigent inmate shall be furnished, free of charge, prosthetic devices such as artificial limbs, eyeglasses, false eyes, dentures, braces, casts and crutches. Nothing in this paragraph shall be interpreted as requiring the provision of any prosthetic device in cases where such device would be of cosmetic effect only. However, prosthetic devices shall be provided where, in the opinion of the attending physician, they are necessary for the psychological well being of an inmate. Provided, where any inmate deliberately breaks or destroys any prosthetic device issued to him, the expense of replacement of such device shall be the sole responsibility of the inmate to whom it was issued.

■ 6. Whenever mass inoculation programs are instituted by governmental agencies for the benefit of the general public, inmates at the Minnesota State Prison shall have the opportunity to participate in such programs.

■ 7. Each inmate being released from the Minnesota State Prison, whether by discharge or otherwise, who has been incarcerated for a period of one year or longer, shall be given a physical examination if he makes a request for such examination within a reasonable time of his discharge. All inmates shall be informed of this right to an examination, and shall be given an adequate opportunity to request and receive such an examination. The scope and extent of physical examinations given pursuant to this paragraph shall be determined by the examining physician on the basis of the individual needs of the particular inmate being examined. The provisions of paragraphs 4a and 4b, *supra*, shall not be construed as regulating the type of physical examination given pursuant to this paragraph.

■ 8. All inmates shall have the right to be examined, diagnosed and treated, at their personal expense, by a private physician. This examination, diagnosis or treatment shall normally occur at the medical facility located within the confines of the Minnesota State Prison and will be arranged and conducted pursuant to guidelines established by the full-time physician in charge of medical services at the Minnesota State Prison. It is recognized that there may be instances where it is in the best interest of the patient to permit examination, diagnosis or treatment to occur elsewhere. This will be done when the decision to do so is made by the full-time physician in charge of medical services at the Minnesota State Prison, subject to the Warden's approval and provided that the inmate shall bear all reasonable costs incurred in his transportation to and from the site of the examination, including transportation costs and the costs of having guards accompany the inmate to and from his examination. Nothing herein shall be interpreted to deprive any inmate from making separate arrangements for examination, diagnosis or treatment by requesting a medical parole.

## VI.B.

### MEDICAL STAFF AT THE MINNESOTA STATE PRISON

■ 1. There shall be a single administrative chief of medical services who shall oversee and be responsible for the overall health care program at the Minnesota State Prison. To the extent possible, this administrative chief shall have no other duties imposed upon him, his primary responsibility being the administration of health care for inmates.

2. There shall be provided and made available at the Minnesota State Prison adequate medical staff, including a full-time physician and medical staff on daily, weekend and "on-call" duty. As used throughout this stipulation, the terms "medical staff," "medical personnel," or similar terms shall be interpreted to include physicians, nurses, licensed medical technicians and paramedics unless the context within which the term is used clearly requires a more restrictive definition.

3. There shall be provided and made available at the Minnesota State Prison reg-

istered nurses sufficient in number, training and experience to properly staff the prison health care facility, for delivery of inmate in-patient and inmate out-patient care.

4. Consultant services, as needed, shall be made available to inmate patients at the Minnesota State Prison or the St. Paul Ramsey Hospital Security Unit or in any other section of the St. Paul Ramsey Hospital which may be operated for the benefit of inmates of the Minnesota State Prison; or, if unavailable, but necessary, at another accredited medical facility.

5. A "sick call" for inmates in the general prison population shall be held at the Minnesota State Prison each weekday and provision shall be made for obtaining necessary care for inmates who become ill or are in need of treatment on weekends. Segregation areas of the Minnesota State Prison shall be visited each weekday by a registered nurse who shall make arrangements for any segregated inmate in need of medical attention to see a physician. In addition, a physician shall visit segregated areas of the prison at least once per week. Inmates shall be given the opportunity to communicate directly with medical personnel on sick call. No inmate shall be punished for failure to report to his work assignment or his non-compliance with sick call procedures in cases where his illness prevents him from doing so. Provided that nothing in this paragraph shall be construed to prohibit such punishment of an inmate pursuant to the Inmate Discipline Plan Procedures in cases where it has been determined by medical staff that he is malingering or feigning illness.

6. Insofar as feasible, no person employed at the Minnesota State Prison health care facility as a member of the medical staff and no person charged with carrying out any duty or responsibility, medical in nature, shall be an inmate.

7. No personnel at the Minnesota State Prison shall hinder, deny, interfere with or otherwise prevent the delivery of medical care to inmates unless the decision to do so is mandated by serious security reasons, such as riots or lockups, and then only temporarily, or else is based upon a health care decision made in the exercise of the best professional judgment of competent medical personnel. Said security reasons shall be reduced to writing within three days after the decision has been made and recorded in a log which will be preserved and made available for inspection by a court of competent jurisdiction.

8. The judgment of the medical staff with respect to medical problems shall not be overridden by nonmedical staff, and the orders of medical staff with respect to prescriptions, medical diets, special baths and other therapy matters shall not be overridden by nonmedical staff. In addition, individual records of the delivery of diet meals and prescriptions shall be maintained. These records shall be reviewed for compliance a minimum of every ninety (90) days by the associate warden for operations or his designee.

## VI.C.

## MEDICAL SERVICES AT THE MINNESOTA STATE PRISON

1. Only minor surgical procedures may be performed at the Minnesota State Prison. Such procedures include, but are not limited to:
   a. Removal of ingrown toenails;
   b. Removal of sebacious cysts and drainage of abscesses;
   c. Repair of minor lacerations;
   d. Removal of sutures;
   e. Wart removal;
   f. Removal of splinters;
   g. Dental and oral surgery performed by a qualified practitioner under proper hygienic conditions.

Except as noted above, all medically-indicated surgery on inmates of the Minnesota State Prison shall be performed at the St. Paul Ramsey Hospital or some other accredited hospital. Provided that nothing herein shall be interpreted as prohibiting the rendition at the Minnesota State Prison of emergency medical treatment, of what-

ever nature, when such treatment is deemed necessary to sustain the life of an inmate.

2. The equipment used at the Minnesota State Prison for the purpose of sterilizing medical supplies or equipment, including linen, shall be kept in good repair. Personnel at the Minnesota State Prison health care facility shall perform, as a matter of regular routine, such testing as will indicate whether instruments or supplies are sterile. In addition, an adequate quantity of prepackaged sterile dressing, sutures and prep pans shall be kept on hand at all times.

3. Substantial steps have been taken at the Minnesota State Prison with a view toward upgrading and improving the health care facilities at that institution. The following improvements have been completed or shall be completed and the Defendants shall maintain said improvements and not allow them to deteriorate:

a. The patient wards at the Minnesota State Prison infirmary are furnished with hospital beds and mattresses;

b. The screens over the windows of the Minnesota State Prison infirmary have been inspected and repaired.

c. A system by which bedridden inmates can effectively signal health care personnel in order to obtain needed attention has been ordered for the Minnesota State Prison infirmary and shall be installed therein immediately upon its receipt.

d. A comprehensive manual and automatic fire alarm system has been installed at the Minnesota State Prison infirmary;

e. New lighting fixtures which will provide proper illumination for the patient wards at the Minnesota State Prison infirmary have been ordered and a significant number of them have already been installed. Installation of the remaining fixtures shall proceed forthwith;

f. Fire doors have been installed at the Minnesota State Prison infirmary where appropriate;

g. The Minnesota State Prison infirmary is and shall be kept free of accumu-lations of combustible materials and all waste material.

h. The Minnesota State Prison infirmary has been inspected by personnel from the State Board of Electricity and the Office of the State Fire Marshal. The electrical and plumbing fixtures at the infirmary shall be maintained in accord with the standards prescribed by the State Board of Electricity, the State Fire Marshal and the State Board of Health.

i. A special treatment unit at the St. Paul Ramsey Hospital has been established where inmates of the Minnesota State Prison may and do receive necessary medical treatment.

j. Hygienic conditions exist in the infirmary and Defendants will see that hygiene in the infirmary will be maintained, and improved upon, where possible, in the future.

4. The advice and recommendations of medical experts and consultants retained by the Minnesota Department of Corrections with regard to the infirmary facilities at the Minnesota State Prison or the quality of treatment rendered to inmates of the Minnesota State Prison shall be seriously considered and implemented by the Defendants, where feasible.

5. There shall be regular safety checks of health care facilities, in particular, any X-ray equipment, to insure that such facilities and equipment are in good, safe operating condition.

6. The Minnesota Department of Health shall conduct annual and periodic inspections of all medical facilities and operations of the Minnesota State Prison. These inspections shall be undertaken to determine whether the medical facilities and operating procedures at the prison comply with current, medically acceptable standards of health, hygiene and sanitation. Following each annual inspection, a report shall be issued by the Minnesota Department of Health and transmitted to the Commissioner of Corrections. This report shall detail existing conditions, note deficiencies found, if any, and make recommendations for correction or remedy, if necessary. The Com-

missioner of Corrections shall forthwith correct or remedy all deficiencies noted in the report. A copy of the first annual report shall be filed with this Court within one year of the date of this order.

## VI.D.

### ST. PAUL–RAMSEY HOSPITAL SECURITY UNIT

1. The St. Paul-Ramsey Hospital Security Unit is intended for the express purpose of providing medical care for appropriate wards of the Minnesota Department of Corrections, including inmates of the Minnesota State Prison. This unit contains bed space for only 15 inmate patients, 4 of which are set aside for the care of Ramsey County inmate patients. Nonetheless, no inmate who, but for said bed space limitations, would be sent to said security unit shall be deprived of similar hospital care at an accredited hospital.

2. No inmate shall be returned to the Minnesota State Prison from the St. Paul-Ramsey Hospital Security Unit, if he has a continuing need for the facilities, care and treatment provided or available to him at said hospital and if the same are not available to him at the Minnesota State Prison, unless such inmate requests or demands that he be returned to the Minnesota State Prison.

3. This court order and the provisions relating to the operation and use of the health care facility at the Minnesota State Prison is premised on the continued operation and use of the St. Paul-Ramsey Hospital Security Unit, at its current or a greater level of capability, as the primary medical treatment center for the Minnesota State Prison. Should circumstances change, nothing shall prevent either party from moving the Court pursuant to paragraph XI of this order for appropriate judicial relief.

## VI.E.

### MEDICAL RECORDS

1. All medical records regarding inmates of the Minnesota State Prison shall be kept confidential. This order of confidentiality is not absolute due to the fact that valid security reasons may arise which justify limited access to an inmate's medical records.

2. No person, other than authorized medical personnel, with the exceptions set forth below, may examine an inmate's medical records without having first obtained prior written consent to do so from the inmate. However, in cases where serious security reasons justify examination of an inmate's medical records, the Commissioner of Corrections and the Warden of the Minnesota State Prison need not obtain prior consent. With respect to the Warden, this right shall be delegable only when he is physically absent from the prison. During such time, the Warden may delegate this privilege to a responsible member of his prison administration. Whenever the Commissioner of Corrections, the Warden or the Warden's designee makes an examination of an inmate's medical file, he shall note on a log contained within said file the date the examination was made and the reasons therefor.

3. To the extent possible, medical record forms used by the staff at the Minnesota State Prison shall be of such a design and content as to readily interface with those medical record forms used by St. Paul-Ramsey Hospital and other such accredited hospitals in the State of Minnesota.

## VI.F.

### DIETS

1. Certain inmates have need of special diets while incarcerated at the Minnesota State Prison, and the failure to provide said diets can be medically harmful. It is ordered that where prescribed for an inmate, a diet shall be prepared and provided him by the staff of the Minnesota State Prison. Whether diets for inmates are prepared in a special kitchen or in the regular inmate kitchen, such food shall be kept sanitary and clean and prepared under such conditions, prior to presentation to the inmate for consumption. Such diet meals

shall be adequate and palatable and in sufficient quantity.

2. Any facility used for the preparation of inmate diets or patient meals shall be free from fire hazards and maintained and operated in a clean and sanitary manner.

3. Safeguards and policies shall be designed and implemented to prevent the diversion of food intended for inmate diets or patient meals and to insure that inmate diets and patient meals are, in fact, provided and delivered to those for whom they were prepared. No inmate shall be deprived of his prescribed diet by reasons of staff shortages in the particular unit in which he is incarcerated or housed.

### VI.G.

### CONFINED INMATES

■ 1. In addition to the provisions of VI.B–5, *supra*, it is ordered that a staff psychologist shall make a minimum of one round every two weeks to all areas within the Minnesota State Prison where inmates are confined on a 24-hour basis so as to visit and observe all of said inmates, particularly inquiring into and observing the mental health of each inmate.

■ 2. No inmate shall risk the receipt or provision of medical care because of his inability to adequately describe, orally or in writing, his problem or complaint. Where there is any doubt with respect to an inmate's complaint or problem, said inmate shall be entitled to present it in person to a registered nurse or physician.

■ 3. No inmate shall be deprived of medical care or attention because of the fact that he is confined in 24 hour lockup, whether designated as segregation, isolation, detention, maximum security, protective custody, or any such term. The court recognizes that there are special problems in delivering medical care to inmates so situated; however, it is ordered that such inmates shall have an opportunity to have their medical complaints and requests considered and reviewed through a direct personal interview, and examination, if necessary, by a civilian nurse who shall make daily visits to each such area and inquiries as to the health status of such confined inmates. In addition, a physician shall visit weekly all areas of the prison where inmates are confined on a 24-hour basis. 24-hour lockup shall be defined as confinement to a cell during the day as well as during evening hours. During such visits, said physician shall inquire into the health status of all inmates who have lodged medical complaints and conduct a direct personal interview and examination where medically indicated at a place of the physician's choosing.

4. a. All inmates described in paragraph 3 above, shall be provided with medical request forms. These forms shall be furnished to the inmates at the time of their placement in such a unit. The medical request form shall be at least in triplicate: one copy shall be reserved for the prison custody office; the original shall be reserved for use by the prison medical office, and for the patient file; and one copy shall be reserved for the inmate's possession. The form shall provide a box which the inmate may check to indicate that he desires to see medical personnel regarding a problem, complaint or condition. There shall be sufficient space provided on the form in which the inmate may, if he chooses, describe his medical problem, complaint or condition, but he shall not be required to do so. An acceptable form is appended to this order and decree.

b. At such time as an inmate shall desire to see medical personnel, for whatever reason, or to obtain medical information or assistance, he shall prepare, complete and sign the medical request form, which shall then be delivered to one of the correctional officers or staff members assigned to the 24-hour lockup unit. The officer receiving the triplicate form from the inmate shall immediately sign the original and two copies in the blank space provided for the same and note the date and the time of receipt of the request. He shall leave one copy with the inmate, retain one copy for the custody office or base file and immediately transmit

the original request form to the prison medical staff.

c. At such time as the prison medical staff receives the form, they shall sign it in the blank space provided, noting the date and time of receipt. Upon receipt of a request for medical service, information or assistance, medical staff will make a personal visit to the inmate that day. Upon a visit of a member of the medical staff to the inmate, the medical staff shall sign the inmate's request form in the blank space provided, noting the time and date of visit. Thereafter the inmate's request shall be handled according to procedures required by this order.

## VI.H.

### MISCELLANEOUS

■■ 1. There shall be adequate job descriptions for all positions related to the provision of medical care to inmates at the Minnesota State Prison. Only those persons qualifying or otherwise meeting these job descriptions shall be so employed at the Minnesota State Prison.

2. In the event of the continued operation of a facility at the Minnesota State Prison for the provision of medical care to inmates, such facility shall comply with all of the provisions of this order and decree and shall be operated in a safe and sanitary condition. The engineering department of the Minnesota State Prison shall be on a 24-hour call, in order to assure proper power, heating and ventilation of such facility.

■■ 3. Inmates who are found to be infected or evidencing contagious diseases or conditions shall be isolated or segregated from other inmates according to acceptable standards of medical care, until said contagious disease or condition shall have abated. No such inmate shall be permitted to participate in the provision of medical care to other inmates, nor to be in or around food or clothing work areas of the prison.

4. The quiet cells located in the Minnesota State Prison infirmary are presently closed by order of the Warden. Said quiet cells shall not be used for any purpose without the provision of adequate safeguards and without first obtaining permission from this court.

5. The Plaintiffs and Defendants have been unable to reach agreement with respect to the Plaintiffs' request that a key to the infirmary be available, at all hours of the day, to authorized personnel working in said infirmary, and to Plaintiffs' claim that the practice of restricting the availability to inmates of certain medications as well as the practice of altering certain inmate prescriptions is violative of their civil rights. Accordingly, the Court will dispose of these claims by separate evidentiary hearing and subsequent order.

## VII.

By written stipulation of the Plaintiffs and Defendants, this action may be and hereby is dismissed as to the Defendants Wendell R. Anderson and James Cicero, M.D., pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, with prejudice.

## VIII.

With the exception of plant or physical differences, this court order shall apply to the primary maximum security prison for men in Minnesota, no matter where located or how designed. At the present time it applies to the Minnesota State Prison in Bayport, Minnesota.

## IX.

The Defendants herein are responsible for insuring that all employees of the Minnesota State Prison and all inmates at the Minnesota State Prison are informed of the terms and provisions of this order and decree and the obligations and rights created and recognized hereby. Accordingly, it is further ordered that a copy of this order and decree shall be distributed to every staff member at the Minnesota State Prison, within 10 days of the date of this order and this decree shall be published in its

entirety, for the benefit of the inmate population, in the "Prison Mirror" within 30 days of the date of this order.

## X.

The terms and provisions of this order and decree are mandatory and are not in the nature of mere direction. The Defendants, their successors, agents, employees and representatives, and all persons in active concert or participation with any of them are hereby enjoined from failing to forthwith implement, execute, or otherwise faithfully carry out and follow all provisions of this order and decree. Violation and refusal to comply with any provision, without lawful excuse therefor, may be punishable by the Court as provided by law.

## XI.

Jurisdiction is retained by this Court for the purpose of enabling any of the parties to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this order and decree, for the enforcement or compliance therewith, for such other purposes as are herein provided for and for the punishment of violations thereof. Nothing in this order and decree shall be construed to prohibit any of the parties to this action from moving for appropriate orders modifying any of the provisions herein in the manner provided in Rule 60(b) of the Federal Rules of Civil Procedure.