Anthony DeGIDIO, James Murray, Antti John Haavisto, Anthony DeGidio, Sr., individually and on behalf of all others similarly situated, Plaintiffs,

v.

Rudy PERPICH, individually and as Governor of the State of Minnesota, Orville B. Pung, individually and as Corrections Commissioner of the State of Minnesota, Robert Erickson, individually and as Warden of the Minnesota Prison at Stillwater, Dr. James Allen, individually and as Medical Director of the Minnesota State Prison at Stillwater, Sister Mary Madonna Ashton, individually and as Commissioner of Health, Defendants.

Civ. No. 4–84–352.

United States District Court,
D. Minnesota,
Fourth Division.

June 12, 1985.

Terence J. McCloskey, Kevin Shea and Robert Kircher, Johnson, Sands, Lizee, Fricker & McCloskey, Minneapolis, Minn., for plaintiffs.

Richard D. Hodsdon, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants Rudy Perpich, Orville B. Pung, Robert Erickson, and Sister Mary Madonna Ashton.

Audrey Zimmerman, Geraghty, O'Loughlin & Kenney, St. Paul, Minn., for defendant Dr. James Allen.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiffs, Anthony DeGidio, et al., brought this action for compensatory and punitive damages and injunctive relief, against Rudy Perpich, Governor of Minnesota; Orville Pung, Corrections Commissioner of Minnesota; Robert Erickson, Warden of the Minnesota Correctional Fa-

cility at Stillwater (Stillwater); Sister Mary Madonna Ashton, Commissioner of Health of Minnesota; and the State of Minnesota. Plaintiffs allege that the defendants failed to provide Stillwater inmates with adequate medical care to treat tuberculosis and to prevent its spread to prisoners or visitors. Jurisdiction is alleged under 28 U.S.C. §§ 1343(a)(3) and (4), and 42 U.S.C. § 1983. By order dated October 10, 1984, this court dismissed the State of Minnesota from the action. The matter is now before the court upon the motion of defendants Perpich, Pung, Ashton, and Erickson for dismissal, or alternatively, for summary judgment. Plaintiffs have filed a motion for partial declaratory judgment, and a motion for leave to amend their complaint and for class certification.

*Background*

Three of the four named plaintiffs—DeGidio, Jr., Haavisto and Murray—are inmates or former inmates of Stillwater who contracted tuberculosis. They allege that defendants subjected them to cruel and unusual punishment in violation of the Eighth Amendment by failing to protect them from exposure to tuberculosis and provide adequate treatment.[1] They also allege negligent diagnosis, treatment and failure to segregate affected inmates, as well as intentional mistreatment, in violation of *Minn.Stat.* §§ 243.57, 144.651 and 609.23. Further, plaintiffs allege that DeGidio, Sr. contracted tuberculosis from his regular visits to his son. They seek to certify a class of former, current and future inmates at Stillwater who have contracted tuberculosis and have been in the past or may be in the future "intentionally and/or negligently mistreated, obviously neglected, misinformed, fraudulently misrepresented, and/or intentionally and/or negligently deprived of necessary and adequate medical care, including diagnosis, prognosis, and treatment while incarcerated therein." Plaintiffs' Second Amended Complaint. They also seek to certify a subclass of

visitors and other members of the public who have come into contact with infected inmates and contracted the disease. Following hearing on this matter the court requested and received additional briefing on the issue of the import of *Hines v. Anderson*, 439 F.Supp. 12 (D.Minn.1977), for this case.

*Discussion*

A. *Class Certification*

Plaintiffs contend that their proposed class and subclass meet the prerequisites of Fed.R.Civ.P. 23(a). They argue that 160 prisoners are suspected to have contracted tuberculosis, that many of these people are located in various Minnesota prisons or throughout the nation and that a class action will enable indigent litigants to redress their grievances. Plaintiffs argue that common questions of fact and law exist among the potential class members and that the requirements of Fed.R.Civ.P. 23(b)(1), (2) or (3) are met.

Defendants, by contrast, claim that plaintiffs' proposed class and subclass are undefinable and conditional and fail to meet the requirements of numerosity and commonality of law or facts.[2] They argue that each person in the proposed class presents unique and individual problems of treatment and that class members would have an inherent conflict because some infected others. Defendants also submit that plaintiffs have not met the requirements of Fed. R.Civ.P. 23(b). Moreover, defendants assert that to the extent the action seeks injunctive relief, the motion for class certification is superfluous because a class has already been created in prior litigation concerning the provision of health care to inmates at Stillwater. *See Hines v. Anderson*, 439 F.Supp. 12 (D.Minn.1977).

■ Fed.R.Civ.P. 23(a) requires that the parties seeking to proceed as a class must demonstrate that:

---

1. Counsel stated at the hearing that the sole constitutional claim is under the Eighth Amendment.

2. Defendant Dr. James Allen joins the other defendants in opposing class certification.

1) the class is so numerous that joinder is impracticable, 2) there are questions of law or fact common to the class, 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and 4) the representative parties will fairly and adequately protect the interests of the class.

Where a class is divided into subclasses, these requirements apply to each subclass. Fed.R.Civ.P. 23(c)(4)(B); *Betts v. Reliable Collection Agency Ltd.*, 659 F.2d 1000, 1004–1005 (9th Cir.1981); *Johnson v. American Credit Company of Georgia*, 581 F.2d 526, 532 (5th Cir.1978). The burden is upon those seeking class certification to prove that all such requirements have been met. *See Thompson v. Sun Oil Co.*, 523 F.2d 647, 649 (8th Cir.1975); *Taylor v. Safeway Stores*, 524 F.2d 263, 270 (10th Cir.1975). Once the prerequisites of Fed.R.Civ.P. 23(a) have been met, the proposed class must establish that there is an additional basis under Rule 23(b) to proceed with a class action.

▮ In the instant case, plaintiffs have failed to show that their proposed subclass of visitors meets the numerosity requirement. Review of the pleadings to date reveals that only one person claims to have contracted tuberculosis as a result of visiting an inmate at Stillwater. Speculation about others who may have been infected is not enough to satisfy plaintiffs' burden. Certification as to the subclass of visitors is therefore denied.

▮ Plaintiffs have, however, fulfilled the requirements of Fed.R.Civ.P. 23(a) concerning the proposed class of prisoners. They claim that approximately 160 inmates have contracted tuberculosis at Stillwater and have submitted approximately 19 affidavits of such individuals. Plaintiffs have also submitted an administrative chart regarding Mantoux testing at Stillwater showing that on February 13, 1984, a total of 89 inmates were shown to be positive converters. In 19 of these cases, plaintiffs have received copies of medical records from Stillwater which verify the Mantoux testing. Considering this showing and the latency period of tuberculosis, the court finds that enough plaintiffs are involved to make joinder impracticable.

Plaintiffs have also shown that common questions of fact arise since the potential class members are or were inmates of Stillwater who were infected with tuberculosis by defendants' allegedly inadequate treatment procedures. Common questions of law concern the standard of care required of the defendants and whether they breached any duty in a way which deprived plaintiffs of their civil rights. Similarly, plaintiffs have demonstrated that the claims of the named representatives are typical of the class and that their counsel is experienced and able to conduct the proposed litigation.

In addition, the court finds that plaintiffs' proceeding is maintainable under Fed.R.Civ.P. 23(b)(2) which provides:

> The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Here, plaintiffs claim that defendants violated their Eighth Amendment rights by refusing to follow the necessary procedures to treat and prevent the spread of tuberculosis. They seek an order enjoining defendants to provide adequate treatment to those with positive tuberculosis and to protect others by a quarantine or other measures.

Plaintiffs also are seeking a substantial sum of money, over $40 million in damages. Such an amount cannot be labeled "incidental" to the injunctive relief plaintiffs seek. Moreover, it appears that each plaintiff must individually show causation between his injury and misconduct by defendants, as well as prove the amount of ensuing damages. Accordingly, under Fed.R.Civ.P. 23(c)(4)(A), the court will confine the class action to those issues pertaining to the alleged constitutional violation and injunc-

tive relief.[3] Thus, individuals will be required to present evidence of causation and their particular damages separately. *See, Denberg v. U.S. Railroad Retirement Bd.,* 696 F.2d 1193, 1207 n. 8 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984); *Hill v. Western Elec. Co.,* 672 F.2d 381 (4th Cir.1982), *cert. denied,* 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982). *See also* 7A Wright & Miller, *Federal Practice and Procedure: Civil* § 1790 (1972).

*B. The Effect of the Order and Consent Decree in Hines v. Anderson*

■ Defendants argue that since 1977 the operation of the medical care program at Stillwater has been subject to the terms of an order and consent decree entered by the Honorable Earl R. Larson in *Hines v. Anderson,* 439 F.Supp. 12 (D.Minn.1977). They claim that the *Hines* court retained jurisdiction and that Stillwater inmates who seek injunctive relief concerning medical care should return to it for enforcement of the previous decree. They state that certification is thus unnecessary and that the injunctive claims should be dismissed to maximize judicial economy and avoid conflicting decisions.

Plaintiffs contend, on the other hand, that they rely on *Hines* not to enforce or modify its order, but merely as authority to show that defendants violated the standard of care owed to inmates at Stillwater. They assert that a careful reading of the order demonstrates that inmates and new parties were not barred from seeking in-

junctive or monetary relief in a separate action in the future.

Plaintiffs in *Hines v. Anderson,* 439 F.Supp. 12 (D.Minn.1977), brought suit in 1973 under 42 U.S.C. § 1983, alleging that the medical facilities and medical care at the Minnesota State Prison in Stillwater violated the Eighth and Fourteenth Amendments.[4] The parties then settled and agreed upon the terms and provisions of the consent decree. The decree provided, among other things, that the "Patients' Bill of Rights", Minn.Stat. § 144.651, shall apply to inmates who receive medical care and treatment at the Minnesota State Prison to the fullest extent possible. The decree also specified the necessary medical staff and determined the hours that such a staff should be available, as well as outlining the types of minor surgical procedures which could be performed at Stillwater.

Defendants claim that *Hines,* if relevant at all to this case, forecloses plaintiffs from bringing their separate suit involving an alleged outbreak of tuberculosis at Stillwater. Defendants have cited little authority for such a restrictive reading, however.

Nor does the language of *Hines* support such a result. Nothing in the order and consent decree bars future inmates from bringing a case concerning different facts. The class in *Hines* is broadly defined, and the consent decree covers the topic of medical care generally. The circumstances of this case involving tuberculosis are different from those underlying *Hines.* The narrow issue here—prevention and treatment

---

**3.** Certifying a class with respect to the causation and damage issues is inappropriate under Fed. R.Civ.P. 23(b)(1) or (b)(3). Plaintiffs have not demonstrated that separate actions would create a substantial risk of inconsistent adjudications with respect to individual class members and thus establish incompatible standards of conduct for the party opposing the class. Nor have plaintiffs shown that adjudication as to one person would substantially affect the rights of others. While common questions of law or fact exist, they do not predominate over individual questions of causation and damages. Moreover, the record shows that over 50 individual proceedings have been initiated in Washington County District Court.

**4.** Plaintiffs originally brought suit against Wendell Anderson, individually and as Governor; Kenneth Schoen, individually and as Corrections Commissioner; Bruce McManus, individually and as Warden of the Minnesota State Prison; Dr. James Cicero, individually and as Medical Director of the Minnesota State Prison; and Dr. Warren Lawson, individually and as Secretary and Executive Officer of the Minnesota State Board of Health.

The order and consent decree substituted Warden Frank M. Wood in his official capacity for the former Warden, McManus. The parties also agreed to dismiss defendants Anderson and Cicero.

of tuberculosis—has not been litigated. In fact, only a few of the proposed class of plaintiffs were even in prison at the time of the *Hines* order. It is highly doubtful that the *Hines* court intended to maintain jurisdiction over any medical case arising at the state prison years later. Under these circumstances, this court finds it proper to entertain plaintiffs' claims for injunctive relief. *Cf. Harris v. Pernsley*, 755 F.2d 338 (3d Cir.1985).

### C. *Motion for Dismissal or for Summary Judgment* [5]

Defendants claim that the Eleventh Amendment bars the plaintiffs' claims for retroactive monetary damages arising from their official actions. They also assert that the amendment entitles them to dismissal of those portions of plaintiffs' complaint which allege violations of state law, including any state law-based claim for injunctive relief. Further, defendants claim that none of them are proper parties to this § 1983 suit. They contend that they had no direct or personal involvement in the matters subject to this action and therefore, cannot be held responsible under § 1983. Defendants claim that since dismissal of the federal claims is proper, no jurisdictional basis remains on which to base the pendant state claims.

Plaintiffs contend, on the other hand, that the Eleventh Amendment does not bar monetary damages or injunctive relief. They maintain that Minnesota has explicitly waived its sovereign immunity in *Minn. Stat.* § 3.736 and assert that its officers can therefore be subject to suit in federal court. Moreover, they argue that the defendants' conduct cannot be considered discretionary, and thus immune, because of *Hines v. Anderson*, 439 F.Supp. 12 (D.Minn.1977). They also argue that the defendants are proper parties under § 1983 because each defendant has affirmative duties imposed by various state laws and by the *Hines* consent decree. These duties, according to plaintiffs, give each defendant the necessary personal involvement under § 1983. Further, plaintiffs state that each of the defendants had a supervisory duty to use their powers reasonably and to prevent abuses by their subordinates. They contend that defendants knew that their subordinates were causing constitutional deprivations, but acquiesced in the conduct. Finally, plaintiffs argue that it is premature at this point to dismiss the defendants until plaintiffs have had a chance to determine the nature and extent of their control.

### 1. Eleventh Amendment

Under the Eleventh Amendment, states are immune from damage suits brought by citizens in federal courts. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The immunity extends to state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945) as quoted in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The general rule is that a suit is against the sovereign if the liability sought must be paid from state funds. *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). As the court in *Hughes v. Blankenship*, 672 F.2d 403 (4th Cir.1982) stated:

[O]fficial capacity suits represent but another way of pleading an action against the entity of which the officer is an agent, ... and damages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity itself. (Citations omitted.) 672 F.2d at 406.

A sovereign's immunity may be waived, however, and a state may consent to suit against it in federal court. *See, e.g.,*

---

**5.** Since the parties have submitted matters outside the pleadings and the court has considered these materials, the motion will be treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b)(6).

*Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Waiver of immunity by a state will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Florida Department of Health & Rehabilitation Services v. Florida Nursing Home Association,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981), quoting *Edelman v. Jordan,* 415 U.S. at 673, 94 S.Ct. at 1360. *See, also, Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "[A] state's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst* at ——, 104 S.Ct. at 907, n. 9.

■ While Minnesota has waived its sovereign immunity to some extent in *Minn. Stat.* § 3.736, the language of subdivision 2 of that section does not clearly show that Minnesota intended to waive any claim of sovereign immunity in federal court.[6]

Nor can the court construe the state's past consent in *Hines v. Anderson,* 439 F.Supp. 12 (D.Minn.1977), as an unqualified waiver of its sovereign immunity. In *Hines,* the state did not agree to be liable for any monetary damages. It did agree, however, that its agents should implement the standard of care imposed by the decree. The state also consented to language that bound not only the defendants, but also their successors, to maintain that basic level of care. No time period was specified. Accordingly, the court finds that the state's consent in *Hines* is a basis for a waiver of its immunity with respect to injunctive relief based on the state law claims in this case. Apart from this limited waiver, however, the Eleventh Amendment bars plaintiffs' § 1983 and pendent state claims

against the defendants sued in their official capacities.

2. Proper Parties

■ 42 U.S.C. § 1983 imposes liability only for conduct which "subjects, or causes to be subjected" the complainant to a deprivation of a constitutional right. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1975). To state a cause of action under § 1983 for an Eighth Amendment violation, plaintiffs must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Liability under § 1983 may not be imposed on the theory of respondent superior. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ In the instant case, plaintiffs argue that the Governor should be held liable because he is at the top of a "chain of responsibility" which knew or should have known of the alleged tuberculosis epidemic. Further, they argue that he appoints the Commissioners of Health and Corrections and is responsible for their actions. The Governor has submitted an affidavit which states that he has had no personal involvement with any of the matters in the complaint. Defendants have not rebutted this affidavit and have not shown that the alleged constitutional violation occurred as a direct result of specific administrative policies under the control of the Governor. While plaintiffs are entitled to the benefits of all reasonable inferences to be drawn from the pleadings and affidavits, they may not merely rest upon allegations, or denials of the defendants' pleadings. *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981). Plaintiffs have failed to set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial as to the Governor's role.

**6.** Subdivision 2 provides:
Claims of various kinds shall be considered and paid only in accordance with the statutory procedures provided. Where there is no other applicable statute, a claim shall be brought pursuant to this section as a civil action in the courts of the state.

Accordingly, the Governor is entitled to dismissal. *See Marchant v. City of Little Rock*, 741 F.2d 201 (8th Cir.1984); *Melanson v. Rantoul*, 421 F.Supp. 492 (D.R.I. 1976).

■ Summary judgment is inappropriate, however, on the grounds that Commissioner Pung, Commissioner Ashton and Warden Erickson are not proper parties under § 1983. All three have submitted affidavits minimizing their personal involvement in the matters before the court. Construing plaintiffs' complaint in the most favorable light, however, it states a claim against those in charge of the prison and of public health, for their alleged policy decision not to segregate affected inmates. *See Marchant v. City of Little Rock*, 741 F.2d 201 (8th Cir.1984). While indifference to an inmate's wellbeing "cannot exist absent some knowledge triggering an affirmative duty to act on plaintiff's behalf, ... actual knowledge of a specific harm is not the only type of knowledge that will suffice." *Doe v. New York City Dept. of Social Services*, 649 F.2d 134 (2d Cir.1981). Defendants may be held liable if they "exhibited deliberate indifference to a ... specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution." *Id.* at 145. *See also Messimer v. Lockhart*, 702 F.2d 729 (8th Cir.1983).

In the instant case, Commissioner Pung has a statutory duty to control and supervise the Department of Corrections, and to appoint and define the duties of a chief executive officer for each facility under his control, including Stillwater. *Minn.Stat.* §§ 15.06, 241.01. His duties include establishing minimum health and safety standards for the facilities and ensuring that these standards are met. *Minn.Stat.* § 241.021 subd. 1. Additionally, *Minn. Stat.* § 243.57 grants him the authority in case of an epidemic, to authorize the removal of inmates affected by the conta-

gious disease. *Minn.Stat.* § 243.57. Thus, the Commissioner may be liable for his failure to act and his affidavit stating that he had no involvement in these matters is not sufficient to justify summary judgment.

Similarly, Warden Erickson may institute quarantine procedures under *Minn.Stat.* § 243.57 and is responsible for correcting any deficiencies in the minimum standards of his facility under *Minn.Stat.* § 241.021, subd. 1(4). He too may be liable for his failure to act. Additionally, Warden Erickson was actively involved in the situation when he wrote a memorandum informing the staff and inmates of the nature and extent of the tuberculosis and of the proposed Mantoux testing. Plaintiffs charge that this memorandum intentionally or negligently concealed the nature and the extent of the tuberculosis.

Commissioner Ashton also may be liable for failing to perform her duties. She is charged by *Minn.Stat.* § 144.05 with planning and facilitating the organization of services for the prevention and control of illness and disease. As part of her duties, the Commissioner has the power to control, by licensing or other means, the treatment in institutions such as hospitals and prisons of persons suffering from communicable diseases, including the disinfection and quarantine of persons. *See Minn.Stat.* 144.12 subd. 1(7). Additionally, Commissioner Ashton, as Commissioner of Health, is the successor of the Secretary and Executive Officer of the Minnesota Health Board and may have additional duties under the order and decree of *Hines v. Anderson*, 439 F.Supp. 12 (D.Minn.1977).

For these reasons, the court finds that summary judgment is inappropriate as to Commissioners Pung and Ashton and Warden Erickson upon the current record.[7]

## D. Partial Declaratory Judgment

Plaintiffs ask the court to declare jurisdiction over all pendent and ancillary

---

7. The court notes that these officials have not yet been deposed, and discovery appears to be

in its early stages.

claims, arguing that those claims arise out of a common nucleus of operative facts as the Eighth Amendment claim. Plaintiffs have failed to cite any convincing authority to show that such a partial declaratory judgment is appropriate at this stage of the proceedings, however. The question of subject matter jurisdiction can be raised at any point during the trial proceedings. Fed.R.Civ P. 12(h)(3). And a court may decline to grant declaratory relief when it will not be effective in settling the controversy which gives rise to the proceedings. *See* Advisory Committee Notes to Fed.R. Civ.P. 57. The court sees no good reason to grant this motion.

### E. Amendment of the Complaint

Plaintiffs seek to amend their complaint to include an allegation of violation of the order and consent decree in *Hines v. Anderson,* 439 F.Supp. 12 (D.Minn.1977). Defendants have not specifically opposed such an amendment.

Fed.R.Civ.P. 15(a) provides that leave to amend shall be freely given when justice so requires. Under these circumstances, where defendants have not shown that such an amendment would prejudice them, the court finds that plaintiffs' motion should be granted.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. Plaintiffs' motion for class certification is granted and a class shall be maintained solely to pursue injunctive relief under Fed.R.Civ.P. 23(b)(2). The class is defined as persons who are, or have been, incarcerated at the Minnesota State Prison at Stillwater, Minnesota who contract, or had, tuberculosis or develop positive reactions demonstrating exposure to tuberculosis while being held there.

2. Defendants' motion to dismiss or alternatively for summary judgment is granted with respect to defendant Perpich, and all claims against defendant Perpich are dismissed. Plaintiffs' claims against defendants Mary Madonna Ashton, Robert Erickson, and Orville B. Pung acting in their official capacities are also dismissed. In all other respects, defendants' motion to dismiss or for summary judgment is denied.

3. Plaintiffs' motion for declaratory judgment is denied.

4. Plaintiffs' motion to amend their complaint is granted.