**TBK PARTNERS, Plaintiff,**

v.

**David D. CHOMEAU, et al., Defendants.**

**No. 84–2638C(1).**

United States District Court, E.D. Missouri, E.D.

Jan. 25, 1985.

Martin M. Green and Gregory D. Hoffmann, Clayton, Mo., Johnny K. Richardson, Jefferson City, Mo., William Klein, New York City, for plaintiff.

Daniel R. O'Neill and Leonard J. Asaro, Frank N. Gundlach and Thomas E. Wack, St. Louis, Mo., for defendants.

## MEMORANDUM

NANGLE, Chief Judge.

This matter is now before this Court on plaintiff's motion for class certification pursuant to Rule 23(b)(1)(A) and (b)(2). *Fed.R. Civ.P.* 23(b)(1)(A), (b)(2). The parties submitted numerous briefs, documents and affidavits to this Court, both in support of and in opposition to plaintiff's motion. In addition, this Court heard oral argument on plaintiff's motion on December 27, 1984. Pursuant to Rule 23(c)(1), this Court makes the following findings of fact and conclusions of law.

### A. FINDINGS OF FACT

1. Plaintiff TBK Partners is a private New York limited partnership engaged in investing in securities for its own account.

2. Defendants are The Reliable Life Insurance Company (hereinafter "Reliable"), Trelico Life Insurance Company (hereinafter "Trelico"), and Jetama Corporation (hereinafter "Jetama"), a wholly-owned subsidiary of Reliable, all Reliable directors and executive officers and certain members of the Gould, Tatman and Chomeau families, individually and as trustees of certain trusts. Defendants together own in excess of 62½% of the outstanding shares of Reliable.

3. Plaintiff's complaint, which is in two (2) counts, challenges the terms and conditions of a proposed merger of Reliable with Trelico. Count I alleges various violations of several federal securities laws including, *inter alia*, section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) and Rule 14a–9 promulgated thereunder, and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder. In Count I, plaintiff alleges that the proxy-prospectus issued in connection with the proposed merger was materially false and misleading. Count II is a state common law claim and charges defendants with breach of their fiduciary duties.

4. The terms of the Merger Offer provide that each share of Reliable common stock will be converted into .001 share of common stock of Jetama. This exchange provision is known as a "1000 for 1 reverse split." No fractional shares of Jetama common stock will be issued and, thus, a Reliable shareholder must own Reliable stock in amounts that are multiples of 1000 to obtain 1 or more shares of Jetama. However, a Reliable shareholder holding stock that would otherwise be converted into fractional shares of Jetama common stock may elect to purchase additional fractional shares of Jetama common stock sufficient to "round up" to a whole share of Jetama common stock or to receive payment in cash for their fractional shares. The purchase and sale price for such fractional shares is $42.55 per share of Reliable common stock which would otherwise be converted into such fractional share interest.

5. The Merger Offer further provides that Reliable will extend dissenter's appraisal rights, pursuant to section 351.455 of the Business Corporation Law of Missouri, to the extent legally available. If a court of competent jurisdiction determines that said dissenter's appraisal rights are not legally available, the Merger Offer then alternatively provides that Reliable will enter into binding arbitration with the dissenting stockholder regarding the valuation of the shares held.

6. The principal allegations of plaintiff's complaint are: 1) that the offer of dissenter's appraisal rights which are otherwise inapplicable to insurance companies is a manipulative device in violation of federal securities laws; 2) that the 1000-to-1 exchange offer itself is a manipulative device in violation of federal securities laws; 3) that the description of the $42.55 per share as "fair" while describing the exchange ratio as "appropriate" was materially false and misleading; and 4) that the proxy prospectus failed to describe the Merger in a candid fashion.

7. The relief sought by plaintiff includes both injunctive and monetary relief. With respect to injunctive relief, plaintiff asks this Court to: 1) eliminate the exchange provision and the appraisal rights provisions from the Merger Offer; 2) determine a fair value of the Reliable common shares; 3) order defendants to consummate the merger, as amended by this Court; and 4) revise various provisions of the Proxy-Prospectus. With respect to monetary relief, plaintiff seeks the fair value of its Reliable shares and damages. Plaintiff's principal purpose in bringing this action is not to block the merger, but to compel defendants to consummate the merger at a "fair" price for Reliable stock.

8. Plaintiff seeks certification of the following class:

All minority beneficial owners (and their successors) of the common stock of Reliable Life Insurance Company ("Reliable") who were entitled to receive the Reliable Proxy Statement/Prospectus for its November 20, 1984 Special Meeting of Stockholders to vote on, *inter alia*, the October 10, 1984 merger agreement among Reliable, Trelico Life Insurance Company, and Jetama Corporation ("Jetama"), excluding from the Class, Reliable's wholly owned subsidiary The Reliable Life Corporation, which owns 82,639 Reliable Shares, and all Reliable directors, executive officers and members of the Gould, Tatman and Chomeau families, who may be deemed to be the bene-

ficial owners of 62.5% of Reliable's outstanding Shares as described in the Proxy Statement/Prospectus p. 5, 8.

9. On November 20, 1984, the stockholders of Reliable held a Special Meeting to vote on the Merger Offer and in excess of 95% of the outstanding shares were voted in favor of the merger. Of the shareholders voting no, at least eight (8) filed for dissenter's appraisal rights under the Merger Offer.

10. Defendants filed a counterclaim against plaintiff alleging abuse of process and *prima facie* tort in the bringing and timing of this action.

11. Plaintiff has outstanding instructions to its traders to *buy* Reliable stock at up to $35.00 per share, which price is $7.55 per share less than the per share price offered to shareholders under the Merger Offer. In a transaction which occurred in September of 1984, a limited partnership that included some of the partners in plaintiff, sold thousands of shares of Reliable to plaintiff at the then market price, which was in the thirties at the time.

12. The class defined by plaintiff, if certified, would consist of approximately 700–800 members.

## B. CONCLUSIONS OF LAW

■ Plaintiff seeks class certification under Rules 23(b)(1)(A) and 23(b)(2). *Fed.R. Civ.P.* 23(b)(1)(A), (b)(2). In determining whether a class action should be certified, the question is not whether plaintiff states a cause of action or whether plaintiff will prevail on the merits; the essential issue is whether the requirements of Rule 23 are met.[1] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). Recently, the Supreme Court mandated a careful, rigorous applica-

tion of the requirements of Rule 23. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Plaintiff has the burden of demonstrating that said requirements are satisfied. *Bishop v. Committee On Professional Ethics And Conduct Of The Iowa State Bar Association*, 686 F.2d 1278, 1288 (8th Cir.1982).

■ The four (4) prerequisites to any type of class action are found in Rule 23(a) and the first such prerequisite is commonly referred to as "numerosity". Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable...." *Fed.R.Civ.P.* 23(a)(1). One court has held that the numerosity requirement was met where the class consisted of approximately forty (40) members. *Esler v. Northrop Corporation*, 86 F.R.D. 20 (W.D. Mo.1979). In the case at bar, the class would consist of approximately 700–800 members. *See Findings of Fact No. 12.* Such a class is clearly so numerous that joinder of its members is impracticable. Thus, the numerosity requirement is met here and defendants do not seriously contend otherwise.

■ The second prerequisite is the so-called "commonality" requirement, which requires a finding that "there are questions of law or fact common to the class...." *Fed.R.Civ.P.* 23(a)(2). This rule does not require that every question be common to the class, but merely that one or more significant questions of law or fact are common to the class. The requirement is usually satisfied if the class members' claims derive from a "common nucleus of operative facts." *Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 690 (E.D.Pa.1977). The commonality rule is clearly satisfied in the case at bar, because plaintiff and the pro-

---

**1.** Therefore, this Court will not inquire into the merits of plaintiff's claims for the purpose of determining whether it appropriately may be maintained as a class action. Defendants' motion to eliminate plaintiff's class action allegations and for "Rule 56(D) Orders" is, in essence, a motion to dismiss or for summary judgment. This Court will not address the arguments made therein until a properly denominated motion is

filed and plaintiff responds thereto. While *Bishop v. Committee On Professional Ethics And Conduct Of The Iowa State Bar Association*, 686 F.2d 1278, 1287–88 (8th Cir.1982), supports an inquiry beyond the pleadings in determining whether the requirements of Rule 23 are met, it does not support a review of the sufficiency or substantive merit of the allegations in connection with a motion for class certification.

spective class members are attacking the same documents, namely the Proxy-Prospectus and the Merger Offer. Thus, there is a common nucleus of operative facts and the second prerequisite is satisfied. Again, defendants do not seriously contend otherwise.

■ The third prerequisite is the so-called "typicality" requirement, which mandates a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class...." *Fed.R.Civ.P.* 23(a)(3). To meet this requirement, the representatives of the class must show that their claims emanate from the same legal theory, remedial theory or events as the persons they seek to represent in the action. *United States Fidelity & Guaranty Co. v. Lord,* 585 F.2d 860, 870 (8th Cir.1978); *Esler,* 86 F.R.D. at 35. *See also* 7 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1764 at 224 (Supp.1983). The *Esler* court defined the relevant inquiry, as follows: "Do the parties seeking to represent the class have claims or defenses which are not shared by the proposed class members?"

■ In the opinion of this Court, plaintiff has not carried its burden with respect to this requirement. Plaintiff seeks to exclude owners of 62.5% of Reliable's stock from the proposed class which means that the class would consist of approximately 37.5% of the shares of Reliable. However, approximately 95% of Reliable's shares were voted in favor of the proposed merger. Subtracting the group that plaintiff seeks to exclude from the class from the group that voted in favor of the merger, it appears that owners of 32.5% of Reliable's stock, or approximately 87% of the proposed class, voted in favor of the merger. The fact that minority shareholders voted in favor of the merger is not fatal to their possible inclusion in a class challenging said merger, but it is the opinion of this Court that the percentage of prospective class members who voted in favor of a merger is a factor to be considered in making the typicality determination. In this case, the great percentage of proposed class members who voted for the merger suggests that plaintiff's claims are not shared by a majority of the proposed class members. Moreover, plaintiff did not submit sufficient evidence for this Court to conclude that many of the minority shareholders who voted for the merger do, in fact, share in plaintiff's claims.

An additional reason that the typicality requirement is not met is an apparent conflict between plaintiff's remedial claims and those of potential class members. Plaintiff seeks to cash out its shares, but at a higher price than that offered by defendants. To achieve this result, plaintiff asks this Court to strike the exchange ratio offer, the offer of appraisal rights and the alternative offer of arbitration. *See Findings of Fact No. 7.* Plaintiff did not convince this Court that a substantial portion of the prospective class do, in fact, share in plaintiff's requested relief. It is likely that some class members who are in favor of the merger want to retain the exchange ratio offer because they desire to participate in the merged concerns. If, as plaintiff contends, the cash offer of $42.55 is unfairly low, then the choice of "rounding up" to one (1) share of Jetama is a bargain for those desiring to take advantage of that option. Moreover, at least eight (8) of the prospective class members have opted for the relatively simple and efficient alternative of appraisal rights. *See Findings of Fact No. 9.* Under these circumstances, plaintiff has not obviated this Court's concerns about the lack of typicality and, thus, plaintiff has not met its burden on this requirement.

■ The fourth and final prerequisite is adequacy of the class representative. Rule 23(a)(4) requires a showing by plaintiff that it "will fairly and adequately protect the interests of the class." *Fed.R. Civ.P.* 23(a)(4). In determining whether this requirement is satisfied:

> The Court must inquire whether the proposed representatives: 1) are able to act as fiduciaries in protecting the class interests; 2) hold a substantial stake in the controversy; 3) possess resources ade-

quate for the prosecution of the claim; 4) are motivated for reasons unrelated to the cause itself; and 5) have any interest conflicting with class interest.

*Esler,* 86 F.R.D. at 36. *See also* 7 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* §§ 1765–69 (1972 & Supp.1983). In the case at bar, there is little question that plaintiff holds a substantial stake in the controversy and that plaintiff possesses resources adequate for the prosecution of this claim. Defendants do not contend otherwise. Moreover, there is no credible evidence that plaintiff is motivated for reasons unrelated to the cause itself. However, this Court believes that the first and fifth factors noted above lead to the conclusion that plaintiff fails to meet the adequacy component of Rule 23(a).

Plaintiff fails to meet the adequacy requirement for several reasons. First, plaintiff's outstanding orders to its buyers to purchase Reliable shares at $35.00 when plaintiff is contending that the Merger Offer price of $42.55 per share is unconscionably low, puts plaintiff in a position of conflict with the interests of potential class members. The class members, of course, are the obvious potential sellers to plaintiff. There is a basic conflict in plaintiff's position, wherein it openly seeks to purchase proposed class members' stock at a price plaintiff says is inadequate and unfair.

The second reason that plaintiff is not an adequate representative is that plaintiff is uniquely subject to certain defenses and claims which other class members are not. For example, plaintiff contends that $42.55 per share is an unfairly low price because Reliable stock has an "intrinsic" value which is much greater than $42.55 per share and because there is no meaningful "market" value. Plaintiff's credibility on this contention is subject to attack because: 1) plaintiff is buying or is offering to buy Reliable stock at $35 per share; 2) in at least one previous case, *Contreras v. Tweedy, Browne & Knapp,* 76 F.R.D. 39, 46 (S.D.N.Y.1977), plaintiff took the position that there was a meaningful "market" value for an inactively traded stock; and 3) a general partner of plaintiff, John Spears, recently authorized the transfer of thousands of Reliable shares from another partnership in which he was a general partner to plaintiff at the then market price which was substantially less than $42.55 per share. "The credibility of a plaintiff may be considered by the trial judge in determining the plaintiff's adequacy as a class representative." *Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir.1981). *See also Polin v. Conductron Corporation,* 552 F.2d 797, 802 (8th Cir.1977). In addition, defendants' counterclaim against plaintiff detracts further from its adequacy as a class representative.

The third and final reason that plaintiff is not an adequate representative is the apparent conflict, discussed *supra,* between the relief demanded by plaintiff and the interests of potential class members. Plaintiff did not demonstrate that all or most class members seek to eliminate the exchange ratio or the dissenters' rights. In the absence of such a showing, this Court must assume that plaintiff's remedial claims are at odds with the interests of some portion of the class. Thus, plaintiff has not met its burden of proving that it is an adequate class representative.

Accordingly, it is the conclusion of this Court that plaintiff's motion for class certification must be denied. Because this Court concludes that the Rule 23(a) prerequisites to a class action are not met here, it is unnecessary to address defendants' additional argument that a class may not be certified under Rule 23(b)(1)(A) and (b)(2).