Leslie **MORGAN, et al., Plaintiffs,**

v.

**UNITED PARCEL SERVICE OF AMER-ICA, INC., and United Parcel Service, Inc., Defendants.**

**No. 4:94–CV–1184 (CEJ).**

United States District Court,
E.D. Missouri,
Eastern Division.

Oct. 30, 1996.

Darlene Robinson, Oakland City, IN, Jack J. Cavanagh, Jr., Paul J. Vaporean, Danis and Cooper, Clayton, MO, Kevin S. Kinkade, Virginia M. O'Leary, Kelly A. Lonnberg, O'Leary and Associates, Oakland City, IN, John J. Carey, Joseph P. Danis, Carey and Danis, St. Louis, MO, for Plaintiffs.

William H. Brown, III, Schnader and Harrison, Philadelphia, PA, Robert A. Kaiser, Daniel K. O'Toole, David W. Welch, Armstrong and Teasdale, St. Louis, MO, for Defendants.

### MEMORANDUM

JACKSON, District Judge.

This matter is before the Court on the renewed motion of the plaintiffs for class certification. *See* Fed.R.Civ.P. 23. Also before the Court is the motion of the plaintiffs to bifurcate the trial. After careful review of the evidence presented by the parties during a nine-day hearing, the Court concludes that the plaintiffs have satisfied the Rule 23 prerequisites only in regard to center manager level employees and, accordingly, the Court will conditionally certify the proposed classes only as to these employees.

Plaintiffs bring this action pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 alleging individual and class claims of employment discrimination.[1]

### I. BACKGROUND

In Count I, plaintiffs Leslie Morgan and Kenneth Stacker claim that the defendants [2]

---

1. Counts I and III assert claims on behalf of the named plaintiffs and members of the proposed classes. Count II asserts Title VII claims on behalf of Vernon Taylor.

2. In this memorandum the defendants will be commonly referred to as United Parcel Service, Inc. ("UPS").

have violated Title VII by discriminating against black salaried employees nationwide in the implementation of pay and promotion policies. Specifically, the plaintiffs allege that the defendants systematically promote black salaried employees more slowly and in smaller numbers than white salaried employees. The plaintiffs allege that through subjective selection procedures the defendants retard and limit the advancement of black salaried employees. As a result, the plaintiffs allege that black salaried employees "peak" at the position of center manager or below. The plaintiffs further allege that black center managers are paid less than similarly-situated white center managers. The plaintiffs allege that these practices are the result of a nationwide policy of discrimination.

With respect to the Title VII claims, the plaintiffs seek to certify two classes. First, in regard to the claim of denial of overall upward mobility, the plaintiffs seek certification of the following class:

All black salaried employees of UPS nationwide employed at any time between December 20, 1991 and the date of judgment in a full-time salaried position at the level of supervisor or higher and who had at least five years' tenure at UPS as of the date of judgment, and who worked during their tenure at UPS in a position in Operations (Package, Hub, Feeder, Air) or Human Resources.

Second, in regard to the claims of unequal working conditions and unequal pay the plaintiffs seek certification of a class comprised of:

All black salaried employees of UPS nationwide employed at any time between December 20, 1991 and the date of judgment in a full-time salaried position, who worked at any time during their tenure at UPS in a position in Operations (Package, Hub, Feeder, Air) or Human Resources.

In Count III, plaintiffs Morgan, Stacker and Theodore Boldin allege that they, and the classes they seek to represent, have been denied overall upward mobility and have been subjected to unequal pay and discriminatory working conditions in violation of 42 U.S.C. § 1981. Specifically, the plaintiffs al-

lege that the defendants have refused to contract with black salaried employees for positions above the center manager level. The plaintiffs claim that this refusal has denied them the opportunity to participate in stock option purchase programs and in decisionmaking regarding the promotion of salaried employees.

With respect to the § 1981 claims, the plaintiffs seek to certify two classes. First, in regard to the claim of denial of overall upward mobility the plaintiffs seek certification of the following class:

All black full-time salaried employees of UPS nationwide who worked on or after June 17, 1989, who held a position in Operations (Package, Hub, Feeder, Air) or Human Resources at some time during their tenure at UPS and who worked for UPS for eight years without or before becoming a division manager level employee.

Second, with respect to the claims of unequal pay and discriminatory working conditions the plaintiffs seek certification of a class comprised of:

All black salaried employees nationwide employed at any time on or after November 21, 1991 and the date of judgment in a full-time salaried position and who worked at any time during their tenure at UPS in a position in Operations (Package, Hub, Feeder, Air) or Human Resources.

Because the plaintiffs seek to certify nationwide classes, a brief description of the organizational structure of defendant United Parcel Service, Inc. ("UPS") is instructive. UPS has eleven geographical regions in the United States. A region manager presides over each of the eleven regions. Each region has approximately six districts. For example, the UPS West Region includes the Missouri, Iowa, Northern Plains, Kansas, Minnesota and Rocky Mountain districts. A district manager presides over each district. Each district is subdivided into divisions which are responsible for different aspects of the defendants' business operations. Each division has a division manager who reports to the district manager. The divisions that are responsible for the pickup, sorting and delivery of packages are called package oper-

ations divisions. Each district has several package operations divisions. For example, in the Missouri District there are seven package operations divisions each of which is responsible for a designated geographic area within the district. Within each package operations division are six to eight package operations centers each supervised by a center manager. The entry-level management position at UPS is supervisor. Supervisors report to center managers.

The named plaintiffs are or were center managers for UPS in the Missouri District who claim they were not promoted as quickly as similarly-situated white employees. They further allege that they were denied promotions beyond the center manager level because they are black.

UPS vests authority in district managers to promote employees to managerial positions at the level of division manager and below. In making these decisions, each district manager utilizes a procedure known as "People's Meetings." During these meetings, held twice a year in each district, information is presented on each supervisor and center manager in the district. While the individual's performance and readiness for promotion is discussed, a color photograph of the person is displayed. As a result of the meeting, a list is compiled of the employees deemed most ready for promotion. When a promotional opportunity arises, the district manager consults the list and determines who will receive the promotion. The decision to promote a division-level manager to a higher position is made outside of the district.

UPS evaluates its employees using the Career Development Management Appraisal ("CDMA") which is copyrighted by UPS and is used nationwide. Each managerial employee uses the CDMA to evaluate the employees he or she supervises. For example, the district manager evaluates division-level managers, division-level managers evaluate center-level managers, and center-level managers evaluate supervisor-level managers. An employee's salary is directly linked to the employee's performance rating on the CDMA. The rating dictates the range of salary increase available to the employee.

For example, an employee who received a 5 on her CDMA would be eligible for a 6% to 7% increase. Based on these guidelines, managers recommend raises for the employees they supervise. The district manager approves all salary increases.

## II. ANALYSIS

■ The Court has wide discretion in determining whether to certify a class. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980); *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir.1994). The question for the Court is not whether the plaintiff will prevail on the merits, but whether the requirements of Rule 23 are met. *Wakefield v. Monsanto Co.*, 120 F.R.D. 112, 115 (E.D.Mo.1988). The plaintiff bears the burden of demonstrating that the requirements for class certification are met. *Coleman*, 40 F.3d at 258. Although discrimination cases are often well-suited for class actions, Title VII contains no special provision relieving the plaintiffs of the burden of satisfying the Rule 23 prerequisites. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982). A party seeking to certify a class action under Title VII must demonstrate that the case conforms to the Rule 23 specifications. *Id.* Such conformance is "indispensable" and the court must carefully apply the Rule 23(a) requirements to proposed Title VII class actions. *Id.* at 160, 102 S.Ct. at 2372.

In order to certify a class, Rule 23(a) requires that: (1) the class be so numerous that joinder of all the members is impracticable; (2) questions of law or fact be common to the class; (3) the claims or defenses of the representative parties be typical of the class; and (4) the representative parties fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

In addition to the Rule 23(a) requirements, plaintiffs must also show that one of the following subsections of Rule 23(b) applies: (1) that there is a risk of inconsistent verdicts if the class is not certified; (2) that injunctive or declaratory relief is appropriate; or (3) that a common question of law or fact predominates any questions affecting only individual members and a class action would be

superior to other available methods. Fed. R.Civ.P. 23(b).

### A. NUMEROSITY

■ Plaintiffs must first show that the class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). There are no arbitrary rules regarding the size of the class necessary to meet the numerosity requirement. *Paxton v. Union National Bank,* 688 F.2d 552, 559 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). "Impracticable" does not mean that joinder must be impossible, but it does require a showing that it would be extremely difficult or inconvenient to join all members of the class. *Gentry v. C & D Oil Co.,* 102 F.R.D. 490, 493 (W.D.Ark.1984). Relevant factors include the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the class members. *Paxton,* 688 F.2d at 560–61.

■ In this case, the plaintiffs presented evidence that the classes may include more than 500 UPS operations employees. Although the evidence does not clearly establish how many of these employees are or were center managers, the plaintiffs are not required to specify an exact number or prove the identity of each class member. *Wakefield,* 120 F.R.D. at 115. The plaintiffs must only show a reasonable estimate of the number of class members. *Id.* Through testimony and affidavits the plaintiffs have identified 19 current or former UPS center managers as class members. Even assuming, *arguendo,* that these 19 individuals constitute the entire class, certification may still be appropriate. Courts have certified classes with fewer than 40 members. *See Esler v. Northrop Corp.,* 86 F.R.D. 20 (W.D.Mo.1979) (citing, H. Newberg, *Class Actions* § 1105b at 174 (1977)); *see also TBK Partners v. Chomeau,* 104 F.R.D. 127, 130 (E.D.Mo.1985). Geographical dispersion is a factor that may establish impracticability even in a relatively small putative class. *See Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50, 55 (8th Cir.1977). In the present case, the potential class members are dispersed throughout the eleven UPS regions in the United States. The Court concludes that because of the number of potential class members and their dispersed locations, joinder would be impracticable in this case. *See Gentry,* 102 F.R.D. at 493 (holding that because of the dispersed locations of the 81 class members in various counties throughout Missouri and Arkansas, joinder would be impracticable).

### B. COMMONALITY AND TYPICALITY

■ Commonality and typicality tend to merge, with both serving "as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon,* 457 U.S. at 158 n. 13, 102 S.Ct. at 2371 n. 13. A showing of commonality and typicality bridges the gap between an individual claim and class members who have the same interests and the same or similar injuries. *Zapata v. IBP, Inc.,* 167 F.R.D. 147, 158 (D.Kan.1996).

■ Commonality is met if a common issue pervades all the class members' claims. *Wakefield,* 120 F.R.D. at 115 (citing *Paxton,* 688 F.2d at 561 (8th Cir.1982)). Commonality does not require that all legal claims be identical but instead requires that one or more significant questions of law or fact be common to the class. *TBK Partners,* 104 F.R.D. at 130; *see Irvin E. Schermer Trust v. Sun Equities Corp.,* 116 F.R.D. 332, 336 (D.Minn.1987). Relevant factors to consider include (1) the nature of the employment practices charged, (2) the uniformity or diversity of the employer's practices, (3) the uniformity or diversity of the class membership, and (4) the nature of the employer's management organization. *Wakefield,* 120 F.R.D. at 116.

■ Typicality requires a showing that the claims of the class representatives are typical of the claims of the proposed class. *Schermer,* 116 F.R.D. at 336. Typicality re-

quires "a demonstration that there are other members of the class who have the same or similar grievances" as the class representatives. *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir.1977), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977).

The Court must determine whether the plaintiffs have demonstrated that the individual and class claims share common issues of law and fact. The plaintiffs argue that their claims and the class claims are based on the same course of conduct and the same legal theories.

■ The plaintiffs claim they have suffered discrimination as a result of the process by which the defendants promote their employees and award salary increases. They allege that UPS's policy of giving district managers unfettered authority regarding promotions has resulted in the discriminatory treatment of black salaried employees across the United States. They further allege that the national salary policies of UPS have resulted in black salaried employees receiving less compensation than their white counterparts. The challenged policies and methods of decision-making are in place in every UPS district in the United States.

The plaintiffs offered evidence, in the form of affidavits and testimony, that they and other center managers in five of the eleven regions in the United States claim to have been denied promotional opportunities because of their race. The plaintiffs also offered statistical evidence demonstrating that, in comparison to white managers, it takes longer for black managers to be promoted at UPS. The affidavits and testimony of managerial employees also include allegations that black salaried employees in the West and North Central regions have received lower salaries than their white counterparts.

In response, the defendants argue that the commonality and typicality requirements have not been met because the promotional decisions at issue in this case are made on a decentralized basis by autonomous decision makers. In other words, promotional decisions are made on a district by district basis. Thus, the defendants argue that a nationwide class is inappropriate because the challenged decisions are made within individual districts.

■ The Court disagrees that the decentralized decisionmaking defeats certification of a class in this case. UPS personnel policies are uniform throughout the country and are promulgated by the national corporate office. These policies include the subjective, decentralized system of decisionmaking which the plaintiffs allege is discriminatory. The plaintiffs claim that UPS' chosen method of promoting salaried employees has resulted in the discriminatory treatment of salaried black employees. They further allege that the defendants' subjective method of evaluating and compensating employees is discriminatory. Evidence has been submitted regarding the alleged discriminatory results of these national policies in not only the Missouri District but other districts throughout the United States. The alleged presence of a discriminatory practice or policy is sufficient to satisfy the commonality requirement. *Paxton*, 688 F.2d at 561; 1 Newburg on Class Actions § 3.10 (1992). Based on the foregoing, the Court concludes that the plaintiffs have demonstrated that a common issue, *i.e.*, UPS's alleged institution of discriminatory promotion and salary policies, pervades all of the proposed class members' claims. The plaintiffs have likewise established that prospective class members have the same or similar grievances as they do. Therefore, the commonality and typicality requirements are satisfied.

■ Defendants next argue that commonality has not been demonstrated as to the § 1981 failure to promote claims. Section 1981 provides, in part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...." 42 U.S.C. § 1981(a). In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that in the employment context this provision applies only to promotions that would result in a new and distinct relationship between employee and employer. *Id.* at 185–86, 109 S.Ct. at 2377–78. Through enactment of the 1991 Civil Rights Act, Congress rejected the *Patterson* interpretation of § 1981, but the new law did not

take effect until November 21, 1991.[3] Civil Rights Act of 1991, Pub.L. 102–166, § 101. In this case, the proposed class, includes employees hired on or after June 17, 1989. As a result, the defendants argue, two different legal analyses would have to be applied to this class. Class members who were denied a promotion prior to the 1991 amendments would have to show that the promotion would have resulted in a "new and distinct" relationship with UPS. Class members who were denied a promotion after November 21, 1991 would not be required to make such a showing.

■■■■ The Court believes that this difference is not sufficient to defeat certification of this class. The class members do not have to be identically situated. *Paxton*, 688 F.2d at 561. Although some class members may have an additional hurdle to clear by demonstrating that a promotion would have created a new and distinct relationship, the underlying elements of a § 1981 action remain the same for all class members. Commonality does not require that all legal issues be identical. *TBK Partners*, 104 F.R.D. at 130; *Schermer*, 116 F.R.D. at 336. Furthermore, every question of law or fact does not have to be common to every member of the class. *Paxton*, 688 F.2d 552, 561 (8th Cir.1982). Accordingly, the Court concludes that commonality is present in the § 1981 failure to promote claims.

## C. ADEQUACY OF REPRESENTATION

■■■■ Next, the Court must determine whether the named plaintiffs can adequately represent the class. In deciding this question, the Court considers (a) whether the class representatives and their counsel will competently and vigorously pursue the action, and (b) whether differences exist between the interests of the class representatives and the putative class. *Schermer*, 116 F.R.D. at 337. Representation is adequate if the representatives have a sufficient interest in the class to ensure vigorous prosecution. *Gentry*, 102 F.R.D. at 494. Further, the interests of the proposed class representa-

tives cannot be antagonistic to the interests of the class. *Paxton*, 688 F.2d at 563.

■■■ In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action. *Zapata*, 167 F.R.D. at 161. Here, the defendants do not challenge the ability of class counsel to conduct the litigation. As a result, the Court concludes that the plaintiffs have satisfied the first prong in establishing adequacy of representation.

■■■ The defendants do argue, however, that the plaintiffs fail to satisfy the second prong because of intra-class conflicts among the managerial employees in the proposed classes. The defendants contend that the status of the plaintiffs as center managers presents an inherent conflict of interest in their proposed representation of other supervisory level employees. The Court agrees.

The plaintiffs are not adequate class representatives for persons below the level of center manager because they supervise those employees. *See Wakefield*, 120 F.R.D. at 117. Center managers are responsible for training and evaluating supervisor-level employees. These evaluations affect salary increases. The plaintiffs have alleged that black salaried employees receive lower pay and less training than their white counterparts. In effect, class members who are supervisors would be challenging the conduct of center managers. As a result, the proposed class representatives would be forced to defend the very conduct they are challenging. The evidence offered at the hearing demonstrates that this conflict is not hypothetical. Indeed, black supervisors have complained about the pay recommendations and training provided by black center managers including Morgan, Stacker and Boldin.

Likewise, plaintiffs, as center managers, cannot adequately represent black managerial employees at higher levels because those managers are responsible for supervising, training, evaluating and recommending for promotion center managers. Plaintiffs have

---

**3.** The changes implemented by the Civil Rights Act of 1991 are not retroactive. *Fray v. Omaha* *World Herald Co.*, 960 F.2d 1370, 1378 (8th Cir. 1992).

been supervised by black division managers who were critical of their job performance and who failed to recommend them for promotions. To the extent that the plaintiffs complain about lower salaries and slow progression through the ranks of UPS management, they will be complaining in part about the conduct of black division managers. Plaintiffs cannot represent these managers while at the same time challenging their actions.

Based on the foregoing, the Court finds that the plaintiffs have met their burden of satisfying the adequacy of representation requirement only in regard to center managers. Accordingly, the proposed classes will be limited to center manager-level employees.

### D. RULE 23(b)

Plaintiffs argue that this class action is appropriate under Rule 23(b)(2), which requires that the "party opposing the class has acted or refused to act on grounds generally applicable to the class" making declaratory or injunctive relief appropriate. Fed. R.Civ.P. 23(b)(2). Plaintiffs seek equitable relief from the defendants' alleged discrimination, including an order enjoining the defendants from continuing their discriminatory policies and practices. Plaintiffs also seek back pay, front pay and compensatory and punitive damages. The defendants argue that Rule 23(b)(2) certification is inappropriate because injunctive relief is not the primary relief sought in this case.

Rule 23(b)(2) certification is appropriate in cases where the plaintiffs seek injunctive relief from racial discrimination by an employer. *Paxton,* 688 F.2d at 563. Injunctive or declaratory relief must be the predominant relief sought for the class. 7A Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1775, p. 466–67 (1987). However, a request for monetary relief does not preclude Rule 23(b)(2) certification unless the request for monetary relief predominates. *Id.; Celestine v. Citgo Petroleum Corp.,* 165 F.R.D. 463, 468 (W.D.La.1995). The question of whether injunctive or declaratory relief predominates is a matter for the sound discretion of the court. 1 Newberg on Class Actions, § 4.14; 7A Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d, § 1775, p. 470. The fact that back pay is sought as well as injunctive relief does not preclude Rule 23(b)(2) certification. *Paxton,* 688 F.2d at 563.

Because the plaintiffs seek not only back pay but compensatory and punitive damages, the Court concludes that monetary damages are not merely incidental to the requested injunctive relief. *See Celestine,* 165 F.R.D. at 469. In this case, if a pattern or practice of discrimination is established, the issue of damages will require additional proceedings to determine the scope of individual relief appropriate for the members of the class. *Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 876, 104 S.Ct. 2794, 2799–2800, 81 L.Ed.2d 718 (1984). Thus, the issue of damages in this case is separate from the request for injunctive relief. Therefore, the Court concludes that monetary damages are not merely incidental to the requested injunctive relief. This conclusion, however, does not preclude the certification of a Rule 23(b)(2) class. *See* 1 Newburg on Class Actions, § 4.14. The court may limit certification to specific issues. Fed.R.Civ.P. 23(c)(4). Consequently, the Court will bifurcate the trial and sever the issues of liability and injunctive relief from the damages phase of the litigation. Furthermore, the Court will certify only the issue of liability and request for injunctive relief as a Rule 23(b)(2) class action. *Wakefield,* 120 F.R.D. at 117; *DeGidio v. Perpich,* 612 F.Supp. 1383, 1386–87 (D.Minn.1985). If liability is established, then the Court will consider certifying the damages phase as a Rule 23(b)(3) class action. *See Wakefield,* 120 F.R.D. at 117; *DeGidio,* 612 F.Supp. at 1387.

### III. CONCLUSION

For the foregoing reasons, the plaintiffs' motion to bifurcate will be granted and the plaintiffs' motion for class certification will be granted in part. An appropriate order will accompany this Memorandum.

## ORDER

In accordance with the Memorandum filed herewith this date,

**IT IS HEREBY ORDERED** that the motion of the plaintiffs for class certification is **granted in part and denied in part**

**IT IS FURTHER ORDERED** that the motion of the plaintiffs to bifurcate the trial is **granted.**

**IT IS FURTHER ORDERED** that the following four classes are conditionally certified under Rule 23(b)(2) for purposes of liability and injunctive relief:

> With respect to the Title VII claim of denial of overall upward mobility, a class is certified consisting of all black salaried full-time employees of UPS nationwide employed at any time between December 20, 1991 and the date of judgment in a full-time salaried position at the level of center manager and who had at least five years' tenure at UPS as of the date of judgment, and who worked during their tenure at UPS in a position in Operations (Package, Hub, Feeder, Air) or Human Resources.

> With respect to the Title VII claims of unequal working conditions and unequal pay, a class is certified consisting of all black salaried full-time employees of UPS nationwide employed as center managers at any time between December 20, 1991 and the date of judgment, who worked at any time during their tenure at UPS in a position in Operations (Package, Hub, Feeder, Air) or Human Resources.

> With respect to the 42 U.S.C. § 1981 claim of denial of overall upward mobility, a class is certified consisting of all black salaried full-time employees of UPS nationwide employed on or after June 17, 1989, who held a center manager position in Operations (Package, Hub, Feeder, Air) or Human Resources at some time during their tenure at UPS and who worked for UPS for eight years without becoming a division manager level employee.

> With respect to the 42 U.S.C. § 1981 claims of unequal pay and discriminatory working conditions, a class is certified consisting of all black salaried full-time employees of UPS nationwide employed as center managers at any time on or after November 21, 1991 and the date of judgment, who worked at any time during their tenure at UPS in a position in Operations (Package, Hub, Feeder, Air) or Human Resources.

**IT IS FURTHER ORDERED** that plaintiffs Leslie Morgan and Kenneth Stacker are designated class representatives for the Title VII claims and the 42 U.S.C. § 1981 claims regarding unequal pay and discriminatory working conditions.

**IT IS FURTHER ORDERED** that plaintiffs Morgan, Stacker and Theodore Boldin are designated as class representatives of the 42 U.S.C. § 1981 claim of denial of overall upward mobility.

**IT IS FURTHER ORDERED** that the class representatives, through counsel, are directed to provide notice of this order granting class certification and all future orders of this Court to all members of the class.