**Donald WOODWARD, Plaintiff,**

**v.**

**UNITED PARCEL SERVICE, INC., Defendant.**

**No. CIV.A.3:01–4747–17.**

United States District Court, D. South Carolina, Columbia Division.

Jan. 28, 2004.

§ 1961.

Herbert W. Louthian, Jr., Deborah R.J. Shupe, Louthian and Louthian, Columbia, SC, Virginia M. O'Leary, O'Leary and Associates, Oakland City, IN, Darlene Robinson, Oakland City, IN, for Plaintiff.

Susan Pedrick McWilliams, Nexsen, Pruet, Jacobs and Pollard, Columbia, SC, Frederick Skip Sugarman, Brian D. Edwards, Alston and Bird, Atlanta, GA, for Defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

JOSEPH F. ANDERSON, JR., Chief Judge.

The plaintiff, Donald Woodward ("Woodward"), filed this action on December 13, 2001, alleging that United Postal Service, Inc. ("UPS") discriminated against him based on his race in violation of 42 U.S.C. §§ 1981 and 1988, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Specifically, Woodward claims UPS discriminated against him in terms of pay and by failing to promote him. Furthermore, Woodward claims that the discrimination created a hostile work environment, that he was constructively discharged, and that he was retaliated against. After filing, the case was referred to Magistrate Judge Bristow Marchant for pretrial proceedings.

## I. BRIEF PROCEDURAL HISTORY

UPS filed for summary judgment on February 26, 2003. Judge Marchant issued a Report and Recommendation ("the Report") on August 29, 2003, recommending that UPS's motion for summary judgment be granted as to all claims. On September 15, 2003, Woodward filed objections to the Report arguing that UPS's motion should be denied as to the causes of action alleging discrimination in pay and promotion.[1] UPS replied to Woodward's objections on October 1, 2003. In addition, at this court's request, both parties filed supplemental briefs on the statute of limitations issue on October 7, 2003.

On December 15, 2003, this court heard oral argument on UPS's motion for summary judgment. At the conclusion of the hearing, the court took the motion under advisement and requested that both sides submit draft orders by January 9, 2004. After reviewing the original and supplemental memoranda, hearing oral argument, and receiving and reviewing the draft orders, the court grants UPS's motion for summary judgment as to all remaining claims.

## II. FACTUAL BACKGROUND

UPS operates a package pick-up and delivery service throughout the United States and the world. Its package operations are organized into approximately 60 separate districts, each of which is man-

---

1. Because Woodward did not object to the recommendation contained in the Report that this court grant summary judgment as to the causes of action for hostile work environment, retaliation, and constructive discharge, this court deems those claims abandoned and adopts the analysis of the Report as it relates to those claims.

aged by a District Manager. Each district primarily consists of business units called package centers and hubs. Package centers deliver and pick up packages to and from customers. Hubs receive and sort packages from package centers and other hubs and then distribute packages to the appropriate UPS delivery facilities. Each package center is staffed at the full-time management level by one to five supervisors and one Center Manager. Usually, four to six package centers are grouped into a division, which is managed by a division manager. Hubs are larger than centers and are managed by supervisors, hub managers, and one division manager.

Each district is further subdivided into a full complement of support functions, such as Industrial Engineering ("IE"), Accounting, Human Resources ("HR"), and Automotive. Each of these divisions is staffed at the full-time management level by supervisors, managers, and one department manager. Division managers and department managers in a district are collectively referred to as "the district staff" and all report directly to the District Manager.

UPS has a formal career development process whereby UPS managers are responsible for evaluating the employees under their supervision and identifying candidates for promotion. In making these decisions, the district staff utilizes a process known as a Career Development Meeting, which is led by the District Manager and District HR Manager and attended by the district staff. During these meetings, the performance, skills, work history, educational background, and other characteristics of each of the supervisors and managers in the district are discussed. From this discussion, a list is compiled of candidates for promotion. When promotional opportunities become available, the District Manager refers to the list and determines who will be promoted within the district. The list is used until the next meeting.

For purposes of compensation, UPS's non-union employees are grouped into salary grades. Salaries vary within each salary grade. Generally, supervisors are in Grade 14, center managers in Grade 16, and division or department managers in Grade 18. Division or department managers calculate salary increases for each manager and supervisor in their respective business unit based upon the unit's budget, the employee's position in the salary range, the employee's job performance the preceding year, and the employee's overall contribution to UPS. The proposed salary increases are reviewed with the District HR Manager and approved by the District Manager and District Controller. Salaries are influenced by a variety of factors, including an employee's previous experience with the company, the length of time in the pay grade, the employee's business unit, previous relocations, job performance, prior salary freezes as disciplinary action, and the employees's previous position in a higher salary grade.

Woodward began his employment with UPS as Package Car Driver in 1986. From 1986 through 1996, Woodward worked in several Grade 14 supervisory positions in the Accounting Department in the South Carolina District. On July 1, 1996, Woodward was selected for promotion to one of two Grade 16 Accounting Manager positions in the Columbia Billing Site for the Southeast Region Finance and Accounting Department, which was independent of the South Carolina District. Approximately one year later, Woodward's Grade 16 position in the Columbia Billing Site was eliminated. Plaintiff was then offered a special assignment in the Corporate Finance and Accounting Department in Atlanta, Georgia, which he performed for several months. When this special as-

signment ended as a result of the work stoppage in August 1997, Woodward returned to Columbia. In February 1998, Woodward was laterally transferred to the position of District Assessor for the South Carolina District, which was in the IE Department. In June of 1999, Woodward was laterally transferred to the position of Training and Development manager in the HR Department.

In October 2000, Woodward was laterally transferred to an Operations position as a Hub Manager to gain Operations experience deemed necessary by his superiors for his advancement within the District. Woodward's performance in this position was unsatisfactory, and he was laterally transferred back to the District Assessor position in January 2001. On January 15, 2001, Woodward resigned.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). When the de-

fendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). Therefore, "[m]ere unsupported speculation ... is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir.1995).

### B. Applicable Statute of Limitations Periods in the Absence of Tolling

■ Woodward's § 1981 claims are governed by the three-year statute of limitations period set forth in South Carolina Code § 15–3–530. *See Love v. Alamance County Bd. of Educ.*, 757 F.2d 1504, 1506 n. 2 (4th Cir.1985). Because Woodward filed this action on December 13, 2001, in the absence of tolling, the limitations period for Woodward's claims under § 1981 extends back to December 14, 1998.

Under Title VII, in a deferral state such as South Carolina, a charge of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discrimination. *See* 42 U.S.C. § 2000e–5(e)(1); *EEOC v. Techalloy Md., Inc.*, 894 F.2d 676 (4th Cir.1990); *Waiters v. Robert Bosch Corp.*, 683 F.2d 89, 90–91 (4th Cir.1982). Woodward filed a charge of discrimination with the EEOC on September 11, 2001. Thus, in the absence of tolling, the limita-

tions period applicable to Woodward's claims under Title VII extends back to November 16, 2000.

### C. Tolling of the Statute of Limitations

#### 1. Woodward's § 1981 Causes of Action

Both parties agree that the limitations period for at least one of Woodward's claims was tolled by *Morgan, et al. v. United Parcel Service, Inc.*, 169 F.R.D. 349 (E.D.Mo.1996), a class action filed in the United States District Court for the Eastern District of Missouri. In *Morgan*, the plaintiffs, African–American employees of UPS, alleged that UPS discriminated against them in violation of Title VII and § 1981 in terms of pay and promotions.

On October 30, 1996, the court in *Morgan* certified four separate classes of plaintiffs—all Grade 16 level employees.[2] The parties do not dispute that when Woodward became a Center Manager in HR on June 1, 1999, Woodward entered at least one of the classes certified in *Morgan*. While the parties agree that Woodward entered at least one of the *Morgan* classes on June 1, 1999, the parties disagree as to *Morgan's* ultimate effect on the causes of action in this case. First, the parties disagree as to which of Woodward's causes of action were encompassed by the claims at issue in *Morgan*. Second, the parties disagree as to the length of any tolling that occurred.

#### a. Which of Woodward's Causes of Action Were Encompassed by the Causes of Action in *Morgan*?

Woodward alleges in his § 1981 promotion claim that UPS failed to timely promote him from Grade 14 to Grade 16. The original complaint in *Morgan* limited the putative class to Grade 16 level employees, thus excluding Woodward. A subsequent amended complaint, filed on January 12, 1996, sought to broaden the class to include Grade 14 level employees. Despite the *Morgan* plaintiffs' efforts to include Grade 14 level employees, the *Morgan* court certified a class limited to Grade 16 level employees.

■ Since Woodward's cause of action for discrimination in promoting in violation of § 1981 is based on UPS's alleged failure to timely promote him from Grade 14 to Grade 16, Woodward's cause of action does not fall within the causes of action certified in *Morgan*. Therefore, at no time did *Morgan* toll the statute of limitations as to Woodward's failure to promote cause of action pursuant to § 1981. Woodward's cause of action alleging discrimination in pay in violation of § 1981, however, does fall within the causes of action certified in *Morgan*.

#### b. How Long Was the Statute of Limitations Tolled as to Woodward's § 1981 Pay Discrimination Cause of Action?

Woodward argues that tolling began on June 1, 1999, and would have ended on May 10, 2000, the date the *Morgan* court

---

**2.** Although the original complaint in *Morgan* limited the putative class to Grade 16 level employees, a subsequent amended complaint, filed on January 12, 1996, sought to broaden the class to include Grade 14 level employees. Despite the *Morgan* plaintiffs' efforts to include Grade 14 level employees, the *Morgan* court certified a class limited to Grade 16 level employees. Since Woodward's causes of action for discrimination in promoting are based on UPS's alleged failure to timely promote him from Grade 14 to Grade 16, these specific causes of action do not fall within the class causes of action certified in *Morgan*. Therefore, at no time did *Morgan* toll the statute of limitations as to Woodward's failure to promote causes of action.

entered final judgment, had Woodward not filed suit before May 10, 2000. Having filed suit on December 13, 2001, Woodward argues that the statute of limitations for the § 1981 pay cause of action was tolled from June 1, 1999 to December 13, 2001 and thus the cut-off date for the § 1981 pay claim should be moved back from December 14, 1998 to June 1, 1996—three years before tolling began.

■ UPS argues that any tolling that began on June 1, 1999, would have ended when the *Morgan* court granted summary judgment to the defendant on all class claims on June 26, 2000—well before Woodward filed his complaint. Therefore, UPS argues, the December 14, 1998 cut-off date should be moved back to October 18, 1997, not June 1, 1996. This court agrees with UPS that any tolling that began on June 1, 1999, ended on June 26, 2000, when the *Morgan* court granted summary judgment to the defendant on all class claims.

In *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 552–553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court recognized that the pendency of a class action tolls the running of the statute of limitation for claims that are the same as those being asserted by the putative class. In *American Pipe,* however, the Supreme Court did not address the question of the duration of any such tolling. This question was addressed by the Supreme Court in *Crown, Cork, & Seal Co. v. Parker,* 462 U.S. 345, 352–53, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). In *Crown, Cork & Seal,* the Supreme Court held that the statute of limitations on an individual class member's claim of discrimination begins to run upon the certification of a class that does *not* include that individual. *Id.* at 352 n. 5, 354, 103 S.Ct. 2392.

In the instant action, this court agrees with UPS that any tolling resulting from *Morgan* ended with the June 26, 2000 or-

der granting summary judgment to UPS. This order effectively extinguished the claims of the class members just as an individual class member's claim is extinguished when a class is decertified or modified such that the individual no longer falls within the class definition. Indeed, both the class certification order in *Crown, Cork & Seal,* and the summary judgment order in *Morgan,* are equally effective in fully resolving the actual or putative class claims giving rise to tolling and in putting all persons with potential individual claims on notice that they need to pursue those claims on their own.

### 2. Woodward's Title VII Causes of Action

■ The cut-off date for Woodward's Title VII causes of action, in the absence of tolling, is October 16, 2000—300 days before Woodward filed a claim with the EEOC. Having found that any tolling pursuant to *Morgan* would have ended on June, 26, 2000 (over three months *before* the cut-off date for Woodward's Title VII claims) it is clear that *Morgan* could not have tolled the statute of limitations as to any of Woodward's Title VII claims. In other words, the class action claims in *Morgan* had been extinguished *before* Woodward's Title VII statute of limitations began to run. Accordingly, *Morgan* had no tolling effect as to these causes of action.

### D. Woodward's Grade 14 to Grade 16 Promotion Claims

In his Objections to the Magistrate's R & R, Woodward objects to the recommendation that summary judgment should be granted as to the promotion causes of action pursuant to § 1981 and Title VII. These two causes of action allege that UPS discriminated against Woodward in failing to promote him from Grade 14 to Grade

16.[3] Woodward was finally promoted to Grade 16 on July 1, 1996. In light of this court's finding concerning the applicable statute of limitations, both Woodward's § 1981 and Title VII promotion causes of action are barred and UPS is entitled to summary judgment on both of them.

In addition, even if the court were to accept Woodward's position that the limitations periods applicable to his § 1981 and Title VII failure to promote claims are June 1, 1996, and August 5, 1998, respectively, the result would be the same. Even under Woodward's analysis of the statute of limitations, his Title VII promotion claim is untimely, and the statute of limitations for his § 1981 promotion claim extends back only to one month prior to his promotion to Grade 16. In other words, even under Woodward's analysis, the limitations period on his only timely claim extends back only 30 days prior to his promotion. Because Woodward has failed to present evidence of a specific promotion he was denied during this 30–day period, he cannot establish a prima facie case of discrimination. Accordingly, UPS is entitled to summary judgment on both promotion causes of action even if Woodward's statute of limitations analysis is used.

### E. Woodward's Grade 16 Pay Discrimination Claims

Woodward's remaining pay discrimination claims under Title VII and § 1981 are very narrow. Specifically, Woodward con- tends that, during his tenure as a Grade 16 employee, (1) he did not progress to the midpoint of the Grade 16 salary range as quickly as white employees, and (2) he received lower annual raises than white Grade 16 employees.

■ The analytical framework for claims of racially disparate treatment that are not supported by direct evidence of discrimination is set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, a plaintiff must establish a prima facie case of discrimination. Once a prima facie case is established, a rebutta- ble presumption arises that the employer unlawfully discriminated against the plain- tiff. The burden of production then shifts to the employer to show a legitimate, non- discriminatory reason for the disputed ac- tion. If the employer produces such a reason, the plaintiff must come forward with evidence that the employer's prof- fered reasons for its actions are merely pretextual and that the real reason is un- lawful discrimination. *Id.* at 802–05, 93 S.Ct. 1817; *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234–35 (4th Cir. 1991).

■ In order to establish a prima fa- cie case of pay discrimination, Woodward must show that he (1) is a member of a protected class; (2) was as qualified as other employees not of the protected class; and (3) was paid less than similarly situat- ed employees who were outside his pro-

---

**3.** Woodward alleges that the July 1999 trans- fer of Luis Mendoza to the corporate office in an accounting manager position, when Wood- ward alleges he was being told that no posi- tions were available, is evidence of unlawful discrimination in promoting. This court agrees with and adopts the finding contained in the Report that Woodward's failure to pro- mote claim with respect to Mendoza must be dismissed because Woodward cannot estab- lish that he was *more* qualified than Mendoza for the job. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir.1996) (affirming the district court's grant of sum- mary judgment where the plaintiff failed to demonstrate that he was more qualified than the employee who received the promotion). Furthermore, it appears that this job action was a lateral transfer for Mendoza and would have been a lateral transfer for Woodward. As such, it could not support a failure to *promote* claim.

tected class. *Bazemore v. Friday,* 751 F.2d 662, 670 (4th Cir.1984). In cases where there are multiple comparators, identification of only a single comparator not in the protected class paid more than the plaintiff may not be sufficient to establish a prima facie case. *Houck v. Polytechnic Inst. & State Univ.,* 10 F.3d 204, 206–07 (4th Cir.1993) ("[I]solated incidents or random comparisons demonstrating disparities in treatment may be insufficient to draw a prima facie inference of discrimination without additional evidence that the alleged phenomenon of inequality also exists with respect to the entire relevant group of employees."). Further, the plaintiff must prove that the comparators upon whom he relies are similarly situated "in all relevant respects." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997); *see also Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 912–13 (4th Cir. 1989) (finding that plaintiffs had not established a prima facie case for discrimination because the plaintiffs' jobs were not substantially the same as comparators' in terms of the required effort and skill).

■ Woodward has not identified any relevant group of similarly situated comparators to support his claim of pay discrimination. In 1997, Woodward was one of two Accounting Managers in the Columbia Billing Site, and his salary was higher than that of his only peer, Luis Mendoza. In 1998, Woodward transferred to the District Assessor position in the South Carolina District—a job in which he had no comparators because the other six Grade 16 managers in the IE department during 1998 and 1999 (while Woodward was the Assessor) all held positions with significantly different duties. Moreover, even assuming these other six managers were sufficiently similar to be comparators, the record reflects that the five individuals who made more than Woodward had been Grade 16 managers from two to eight years longer than Woodward, a factor that would naturally affect a manager's compensation.

In 1999, Woodward was given a transfer to the HR Department. The record indicates there were eight other Grade 16 managers in that department during the relevant period; however, none of them shared the same duties as Woodward. In addition, five of the eight managers had from six to eleven years more experience than Woodward at the Grade 16 management level and could not legitimately be considered proper comparators. Only two of the remaining three Grade 16 managers made more than Woodward: Franklin Hatchell and Daniel Fox.[4] UPS has provided evidence that the salaries of both of these individuals during the relevant time were higher than Woodward's as a result of previous Operations experience (Hatchell and Fox), documented stronger job performance (Hatchell), and/or longer tenure as a Grade 16 employee (Hatchell). Woodward has offered no evidence that UPS's explanation for these differences in pay is untrue or is mere pretext for race discrimination.

Woodward argues that four employees progressed to the mid-point of the Grade 16 salary range within 4 or 5 years of being promoted to that level. Presumably, Woodward's argument is that he would not have progressed as quickly as these employees. This argument cannot form the basis of a pay discrimination claim because of its speculative nature. In addition, it appears that Woodward resigned four and one-half years after his promotion to Grade 16 while at 96.9% of his pay range. As a result, it is possible that Woodward would have progressed to the Grade 16 salary mid-point in the same period of time.

---

4. Apparently, Fox made $25 more per month than Woodward during the relevant period.

■ Further, UPS contends that Woodward's argument regarding his relative progress to Grade 16 mid-point is misleading because Woodward has focused only on a sub-set of the potential body of comparators. Woodward has identified four white co-workers who progressed to this point more quickly than he did or would have. According to UPS, however, this argument is misleading because Woodward has selectively focused only on those employees who progressed more quickly than he believes he would have progressed and has ignored a larger number of white co-workers who either did not progress to the Grade 16 mid-point at all, or who took substantially longer than four to five years to do so. UPS identified six such comparators who took six to twelve years, or longer, to reach this milestone. Furthermore, UPS presented evidence that, after four and one-half years at this level, Woodward was progressing more quickly than several of these employees. Under the circumstances, the court agrees that Woodward's showing, without more, is insufficient to demonstrate that Woodward was progressing more slowly up the Grade 16 salary scale than white employees at the same level.

In summary, Woodward has failed to identify any comparators who are similarly situated with respect to pay. Woodward has made no effort to demonstrate that any of the alleged comparators that he has identified held positions whose duties were the same as or substantially similar to his own. Instead, Woodward relies solely on his unsupported assertion that all Grade 16 level employees are similarly situated with respect to pay. Even assuming that Woodward has established a prima facie case of pay discrimination, however, he has failed to respond to UPS's evidence that the pay disparities between Woodward and his alleged comparators are the result of legitimate factors such as longer tenure as a Grade 16 employee and different work

histories. As a result, there is simply no evidence from which to infer that UPS discriminated against Woodward with respect to pay.

## IV. CONCLUSION

After carefully considering the record in this case, the applicable law, and Woodward's objections, this court agrees with the Report that summary judgment is appropriate. Accordingly, the objections are overruled, the analysis of the Report is adopted except where modified herein, and UPS's motion for summary judgment is granted as to all claims.

IT IS SO ORDERED.